## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

CASE NO. 24-10174-CC

---

TAMARA BAINES,

*Plaintiff-Appellant,*

v.

CITY OF ATLANTA, GEORGIA and
ROBIN SHAHAR in her Individual Capacity,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
HONORABLE THOMAS W. THRASH
(1:19-cv-00279-TWT-JSA)

---

### BRIEF OF APPELLEE CITY OF ATLANTA

---

Halima Horton White (Georgia Bar No. 367888)
Jamala S. McFadden (Georgia Bar No. 490959)
The Employment Law Solution, LLC
800 Mount Vernon Highway, Suite 410
Atlanta, GA 30328
Tel: 678-424-1380
Fax: 404-891-6840
hwhite@theemploymentlawsolution.com
jmcfadden@theemploymentlawsolution.com

*Counsel for Appellee City of Atlanta*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Defendant-Appellee City of Atlanta, pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, 26.1-2, and 26.1-3, hereby discloses a complete list of all persons or entities who may have an interest in the outcome of this case:

Anand, Justin S., Magistrate Judge, United States District Court

Baines, Tamara, Plaintiff-Appellant

Baker Donelson Berman Caldwell & Berkowitz, P.C., - Counsel for Appellee, Robin Shahar and Former Counsel for Appellee City of Atlanta

City of Atlanta, Defendant-Appellee

The Employment Law Solution, LLC - Counsel for Appellee City of Atlanta

Gevertz, David E., Former Counsel for Appellee Robin Shahar, Former Counsel for Appellee City of Atlanta

Jarrells, Hannah E., Former Counsel for Defendant-Appellee City of Atlanta, Counsel for Appellee, Robin Shahar

Lambert, Lisa C., Former Counsel for Plaintiff-Appellant

Law Office of Lisa Lambert, Former Counsel for Plaintiff-Appellant

Legare, Attwood & Wolfe, LLC- Counsel for Plaintiff-Appellant

Legare, Cheryl, Counsel for Plaintiff-Appellant

Lewis, Suzanne T., Former Counsel for Defendants-Appellees Robin Shahar
and City of Atlanta

McFadden, Jamala S., Counsel for Defendant-Appellee City of Atlanta

Thrash, Hon. Thomas W., United Stated District Judge

Torgerson, Marissa, Counsel for Plaintiff-Appellant

White, Halima Horton, Counsel for Defendant-Appellee City of Atlanta

## STATEMENT REGARDING ORAL ARGUMENT

Appellee does not request oral argument. The briefing in this case adequately presents the facts and legal arguments and should provide sufficient basis for dismissal of the appeal or for affirming summary judgment. If, however, this Court believes that oral argument would be helpful, Appellee stands ready to participate.

## **Table of Contents**

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**............................................................................**C-1**

**STATEMENT REGARDING ORAL ARGUMENT**.........................................**i**

**TABLE OF AUTHORITIES**............................................................................**v**

**JURISDICTIONAL STATEMENT** ...............................................................**xi**

**STATEMENT OF THE ISSUES** .....................................................................**1**

**Statement of the Case**...................................................................................**2**

**Statement of Facts** .......................................................................................**2**

    A.   In 2016, Baines Had Mental Illness but Did Not Take Medication. .........3

    B.   Rashad Reported that Baines Propositioned Her Romantically and that Baines Retaliated against Her..........................................................................3

    C.   An Outside Attorney Investigated and Implemented a "No Contact Order" between Baines and Rashad; Rashad Reported that Baines Violated the No Contact Order...........................................................................................4

    D.   While at Work, Baines Said She Wanted To Kill Herself, Prompting Intervention and Prompting Baines To Take FMLA Leave.............................5

    E.   The City Required Baines To Submit to a Fitness for Duty Examination before Returning to Work...................................................................................6

F.   Dr. Ojelade Determined that Baines Was Not Fit To Return to Work, and the City Notified Baines of Her Options. ...........................................9

G.   After Baines Opened a Law Practice and Practiced Law in a Non-City Case, without City Approval, the City Terminated Her Employment. ...........10

**Course of Proceedings and Disposition Below** ...............................................**12**

A.   Although an Attorney, in Her EEOC Charge, Baines Did Not Describe Anything Sexual or Sex-Based, and She Left Blank the Boxes that Would Signal As Much. ...............................................12

B.   From Her Charge, the City Did Not Glean That Baines Was Alleging Sexual Harassment. ...............................................13

C.   The Magistrate Judge Recommended that Summary Judgment Be Granted to the City on Most of Baines' Claims. ...............................................14

D.   Baines Was Left with No Claims To Try. ...............................................19

E.   The District Court Denied Baines' Motion for Sanctions. ...............................20

**SUMMARY OF ARGUMENT** ...............................................**20**

**ARGUMENT** ...............................................**23**

I.     SUMMARY JUDGMENT SHOULD BE AFFIRMED ON BAINES' SECTION 1983 CLAIM. ...............................................23

A.   Baines' Section 1983 Claim against the City Is Time-Barred. ...............23

B.    Baines Has Not Shown a "Widespread Custom" or "Policy" of Sexual Harassment. ....................................................................................25

C.    The Alleged Wrongdoers Were Not "Policymakers" within the Meaning of the Law, and Section 1983 Liability Cannot Attach to Their Actions. .......26

D.    Baines Asserts that the Individuals at Issue Were Responsive. ..............28

E.    Section 1983 Does Not Cover Baines' Retaliation Complaints. ..............28

II.    SUMMARY JUDGMENT SHOULD BE AFFIRMED ON BAINES' TITLE VII SEXUAL HARASSMENT CLAIM. ..................................................29

A.    Baines Failed To Exhaust Sexual Harassment Claims in Her March 3, 2017 EEOC Charge. ...........................................................................30

B.    Baines' Untimely "Amendment" Does Not Cure Her Failure To Exhaust. ...........................................................................35

III.    SUMMARY JUDGMENT SHOULD BE AFFIRMED ON BAINES' ADA CLAIMS. ...........................................................................36

A.    Baines Cannot Show She Was Qualified To Perform as an Assistant City Attorney. ...........................................................................36

B.    The Fitness for Duty Exam Was Job-Related and Consistent with Business Necessity. ...........................................................................37

C.    Baines Cannot Support a Failure To Accommodate Claim. ...................41

IV.      SUMMARY JUDGMENT SHOULD BE AFFIRMED ON BAINES'

FMLA INTERFERENCE CLAIM. .......................................................................43

V.       SUMMARY JUDGMENT SHOULD BE AFFIRMED ON BAINES'

RETALIATION CLAIMS. ....................................................................................45

VI.      THE PRIVILEGE DECISION SHOULD BE AFFIRMED. ..............48

VII.     THE DENIAL OF SANCTIONS SHOULD BE AFFIRMED. ..........51

**CONCLUSION** ...................................................................................................**52**

**CERTIFICATE OF COMPLIANCE** .................................................................**54**

**CERTIFICATE OF SERVICE** ..........................................................................**55**

iv

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Baldwin v. Sec'y of Veterans Affairs*,

    No. 19-11341, 2023 WL 3961405 (11th Cir. Jun. 13, 2023), .......................40, 41

*Bell v. Sheriff of Broward Cnty.*,

    6 F.4th 1374, 1378 (11th Cir. 2021) ....................................................................45

*Brochu v. City of Riviera Beach*,

    304 F.3d 1144, 1156 (11th Cir. 2002) ................................................................47

*Brungart v. BellSouth Telecomms., Inc.*,

    231 F.3d 791, 799 (11th Cir. 2000) ....................................................................47

*Chanda v. Engelhard/ICC*,

    234 F.3d 1219, 1225 (11th Cir. 2000) ....................................................33, 34, 35

*Cleveland v. Home Shopping Network, Inc.*,

    369 F.3d 1189, 1193 (11th Cir. 2004) ................................................................36

*Conroy v. Twp. of Lower Merion*,

    77 Fed.Appx. 556, 558, 559 (3d Cir. 2003) .......................................................44

*Davenport v. Edward D. Jones & Company, L.P.*,

    891 F.3d 162 (5th Cir. 2018) ........................................................................31, 35

*Fairchild v. Forma Sci.*,

    147 F.3d 567, 574, 575 (7th Cir. 1998) .......................................................35, 36

*Free v. Granger*,

    887 F.2d 1552, 1557 (11th Cir. 1989) ...................................................27

*Grace v. Adran, Inc.*,

    470 Fed.Appx. 812 (11th Cir. 2012) ....................................................45

Gregory v. Georgia Dep't of Human Resources,

    355 F.3d 1277, 1279 (11th Cir.2004). ..................................................34

*Horace v. ARIA*,

    No. 23-12414, 2024 WL 1174398 (11th Cir. Mar. 19, 2024), ...............31, 34, 35

*Jett v. Dallas Indep. School Dist.*,

    491 U.S. 701 (1989) ..........................................................................26, 27

*Jones v. Gulf Coast Health Care of Delaware*,

    854 F.3d 1261, 1267-1270 (11th Cir. 2017)........................................44

*Lopez-Lopez v. Robinson School Dist.*,

    958 F.3d 96 (1st Cir. 2020) ...............................................................39, 41

*Nat'l Railroad Passenger Corp. v. Morgan*,

    536 U.S. 101 (2002) ...........................................................................23

*Nichols v. S. Ill. Univ. – Edwardsville*,

    510 F.3d 772, 787 (7th Cir. 2007) .......................................................45

*Nix v. WLCY Radio/Rahall Comms.*,

    738 F.2d 1181 (11th Cir. 1984) ..........................................................48

*O'Haver v. Orthopaedic Assocs. of Wis., S.C.,*

    No. 15-CV-240, 2015 WL 5714231, at *3 (E.D. Wis. Sept. 29, 2015) ............18

*Ortiz v. Waste Mgmt., Inc.,*

    808 Fed.Appx. 1010 (11th Cir. 2020) .....................................................32, 33, 35

*Owens v. Jackson Cnty. Bd. Of Educ.,*

    561 F. App'x 846, 848 (11th Cir. 2014)............................................................29

*Owusu-Ansah v. The Coca-Cola Co.,*

  715 F.3d 1306, 1309, 1311-12 (11th Cir. 2013), *cert. denied*, 571 U.S. 1045

  (Nov. 18, 2013)..........................................................................................38, 41, 42

*Ratliff v. DeKalb Cnty., Ga.,*

    62 F.3d 338, 340 (11th Cir. 1995) .....................................................................29

*Rodriguez v. School Bd.,*

    60 F.Supp.3d 1273 (M.D. Fla. 2014) ..........................................................39, 41

*Scott v. Allied Waste Serv. of Bucks-Mont,*

  2010 U.S. Dist. LEXIS 136202, Civil Action No. 10-105 (E.D. Pa. Dec. 23,

  2010)...................................................................................................................40, 41

*St. Louis v. Praprotnik,*

    485 U.S. 112, 124 (1988) ...................................................................................27

*Stewart v. Happy Herman's Cheshire Bridge, Inc.,*

    117 F.3d 1278, 1286 (11th Cir. 1997)................................................................42

*Thomas v. Cooper Lighting, Inc.*,

    506 F.3d 1361, 1363 (11th Cir. 2007) ................................................45

*Tinney v. Shores*,

    77 F.3d 378, 380 (11th Cir. 1996) ....................................................23

*Todd v. Fayette Cnty. Sch. Dist.*,

    998 F.3d 1203, 1218 (11th Cir. 2021) ....................................39, 40, 41

*Univ. of Tex. Sw Med. Ctr. v. Nassar*,

    570 U.S. 338 (2013) ........................................................................46

*Watkins v. Bowden*,

    105 F.3d 1344, 1354 (11th Cir. 1997) ..............................................29

*Watson v. Blue Circle, Inc.*,

    324 F.3d 1252, 1258 ................................................................30, 35

*Watson v. City of Miami Beach*,

    177 F.3d 932, 935 (11th Cir. 1999) ..................................................38

*Wilcox v. Lyons*,

    970 F.3d 452 (4th Cir. 2020) ...........................................................29

*Wilkerson v. Grinnell Corp.*,

    270 F.3d 1314, 1317 (11th Cir. 2001) ........................................29, 35

*Williams v. McNeil*,

    557 F.3d 1287 (11th Cir. 2009) ........................................................24

*Williams v. Motorola, Inc.*,

   303 F.3d 1284, 1290 (11th Cir. 2002) ...............................................38

*Wood v. Green*,

   323 F.3d 1309, 1314 (11th Cir. 2003) ..............................................15

**Statutes**

28 U.S.C. § 1291 .............................................................................xii

29 U.S.C. § 626(d)(1)(A) ...................................................................28

42 U.S.C. § 1983 ................................................1, 14, 19, 20, 22, 23, 24, 25, 26, 27

42 U.S.C. § 2000e, et seq. ...............13, 16, 18, 19, 20, 27, 29, 30, 31, 33, 34, 43, 45

42 U.S.C. § 2000e-5(e)(1) ...........................................................27, 28, 33

42 U.S.C. §12112(d)(4)(A) ...............................................................36

**Other Authorities**

City Ordinance §114-436 ..................................................................10

City Ordinance §2-811 .....................................................................10

City Ordinance §2-820 .....................................................................10

**Rules**

Fed. R. Civ. P. 54(b)......................................................................xii

Fed. R. Civ. P. 56(a).......................................................................22

**Regulations**

29 C.F.R. § 1601.12(b)...................................................................34

29 C.F.R. § 825.214(b)..............................................................42, 43

29 C.F.R. § 825.702(c)(4).............................................................18

45 C.F.R. § 160............................................................................50

45 C.F.R. §§ 160.102 (a)..............................................................48

45 C.F.R. §§ 160.103....................................................................48

45 C.F.R. § 160.103(1)(i)..............................................................49

45 C.F.R. § 164............................................................................50

45 C.F.R. § 164.508(a)(1).........................................................50, 51

45 C.F.R. § 164.508(c)(1)(i)-(vi)...................................................51

45 C.F.R. § 164.512(e).............................................................50, 51

45 C.F.R. § 164.512(e)(1)(ii)(B)....................................................52

45 C.F.R. § 164.512(e)(1)(v)(A)-(B)..............................................52

## JURISDICTIONAL STATEMENT

This Court lacks subject matter jurisdiction over this, Baines' second appeal ("*Baines II*"), because Baines is not appealing final judgments.

This Court dismissed Baines' first appeal—No. 22-12611-V ("*Baines I*")—for the same reason. (*Baines I*, App. Doc. No. 59-1). On remand, Baines moved to amend her complaint to omit a settled Family and Medical Leave Act ("FMLA") interference claim and moved for entry of final judgment. (Doc. No. 356). The District Court granted leave to amend but denied Baines' motion to enter final judgment in Appellees' favor. (Doc. No. 358). The District Court reasoned that Baines "made no attempt to make the showing required by Rule 60(b)" in order to obtain the judgment. (*Id.*). Rather than attempt to make the required showing, and even despite the District Court's order, Baines immediately filed this appeal, *Baines II*. Therefore, for the same reasons as in *Baines I*, this Court lacks jurisdiction over this appeal. And the instant *Baines II* should be dismissed with prejudice.

## STATEMENT OF THE ISSUES

1.  Whether this Court has jurisdiction over this appeal when there has been no final judgment on the FMLA interference claim that settled?

2.  Whether Baines' Section 1983 sexual harassment claim is time-barred where Baines filed this lawsuit more than two years after any alleged sexual harassment ceased?

3.  Whether Section 1983 *Monell* liability applies where Baines failed to show that she suffered sexual harassment due to City Policy and failed to show that the City was deliberately indifferent to her Constitutional rights?

4.  Does an EEOC charge exhaust a sexual harassment claim where the charge does not contain facts about anything sexual or gender-based; does not check the "sex" box; and does not check the "continuing violation" box?

5.  Whether the FMLA required the City to reinstate Baines to her previous, <u>full-time</u> attorney position when her therapist released her for <u>part-time</u> work only and did not address the City's legitimate safety concerns?

6.  Whether a fitness for duty exam was job-related and consistent with business necessity where (among other things) while at work, the employee exclaimed to multiple people that she wanted to kill herself?

7.  Whether Baines can prove her termination was retaliation when the decisionmaker did not know about her protected activity, and Baines was

1

terminated after incorporating a law practice and practicing law in a non-City matter, without the City's knowledge, against anti-moonlighting rules?

8.  Whether Baines can show that the District Court erred related to privilege issues or abused its discretion related to sanctions issues?

## Statement of the Case

This is an employment action. It is before the Court on Appellant Tamara Baines' ("Baines'") second appeal of the District Court's decision granting summary judgment to the City of Atlanta and Individual Defendant Robin Shahar. Baines also appeals the District Court's privilege decision regarding certain communications and its decision not to impose sanctions against the City for speaking to Dr. Prothro-Wiley—a fact witness—outside of Baines' presence.

## Statement of Facts

The City of Atlanta is a municipal corporation of the State of Georgia. Its principal service is to promote the safety, health, peace and general welfare of the City and its inhabitants.

## A. **In 2016, Baines Had Mental Illness but Did Not Take Medication.**

Before the incidents giving rise to this suit, Baines had been diagnosed with bipolar disorder. (Doc. No. 264-1, ¶ 1).[1] In 2016, Baines was not taking her medication, which can aggravate symptoms. (*Id.*, ¶ 2).

As the Magistrate Report & Recommendation ("R&R") found, Baines also suffered from panic disorder, major depressive disorder, and anxiety disorder. (Doc. No. 299 at 8). Among other symptoms, these disorders caused Baines to experience sleeping issues, anxiety, panic, uncontrollable thoughts, and extreme mood swings. (*Id.*).

## B. **Rashad Reported that Baines Propositioned Her Romantically and that Baines Retaliated against Her.**

In June 2016, an attorney in the City's Legal Department, Maiysha Rashad, reported Baines to then-City Attorney Cathy Hampton. (Doc. No. 264-1, ¶ 3). Rashad reported to Hampton that Baines sent a text message, asserting, among other things, ". . . I find you enormously attractive and am totally into you. I notice you in a room full of people and am captivated so much so that I've fumbled every attempt to ask you out . . . Will you go out with me?" (Doc. No. 264-1, ¶ 7). Rashad felt uncomfortable; asked her boyfriend what to do; called and asked a friend; and then

---

[1] The majority of the facts contained in this Section come from Baines' own Response to the City's Statement of Undisputed Material Facts Supporting Summary Judgment.

3

finally Googled "how to ward off a co-worker's advances" and gave a response she found online. (*Id.*, ¶ 8). Rashad responded that she was flattered but had a strict rule to never get involved with a co-worker. (*Id.*, ¶ 9). Baines responded, "Got it." (*Id.*).

Rashad reported to then-City Attorney Hampton that after Rashad rejected Baines' request to go out with her, Baines: (1) "freaked out"; (2) called Rashad homophobic (Rashad is a heterosexual female); and (3) asserted that Baines would remove Rashad from working on certain legal cases. (Doc. No. 264-1, ¶ 5). Rashad was upset and showed Baines' text messages to Hampton. (*Id.*, ¶ 6).

### C. **An Outside Attorney Investigated and Implemented a "No Contact Order" between Baines and Rashad; Rashad Reported that Baines Violated the No Contact Order.**

Hampton referred the issues regarding Baines and Rashad to an outside attorney, David Gevertz, to investigate. Gevertz met with Baines and Rashad. The resolution was that Baines and Rashad would stay away from each other, and the two would not work on any cases together anymore, this was the so-called "No Contact Order." (Doc. No. 264-1, ¶¶ 19-21).

In December 2016, Rashad reported to then-Chief Compliance Officer Jeffrey Norman that despite the No Contact Order, Baines had begun popping up around Rashad more and more; that Baines parked her car next to Rashad's car; that Baines walked back and forth in front of Rashad's office periodically; that Baines said, "hey, how are you?" and when Rashad did not respond, Baines went into Rashad's office

4

and screamed in Rashad's face. (Doc. No. 264-1, ¶ 22). Norman said he would take the issue to HR the next day. (*Id.*, ¶ 23). On December 5, 2016, Rashad met with Angela Addison in HR regarding Baines. (*Id.*, ¶ 24).

**D. While at Work, Baines Said She Wanted To Kill Herself, Prompting Intervention and Prompting Baines To Take FMLA Leave.**

The next day, on December 6, 2016, Baines met with Angela Addison and Catherine Le May in Human Resources ("HR"). (Doc. No. 299 at 12). Addison testified that, during that meeting, Baines threatened to kill herself. (*Id.* at 12-13).

On December 6, 2016, former HR Commissioner Yvonne Yancy also met with Baines. (Doc. No. 298 at 59-60). When Baines and Yancy met, before the conversation could begin, Baines talked about wanting to kill herself. (*Id.* at 62). Baines admits having a mental breakdown on that day and becoming suicidal, including that she had cut her wrists open on the night of December 6, 2016. (Doc. No. 264-1, ¶ 28).

Yancy understood that Baines told multiple people that she wanted to go home and kill herself. (*Id.*, ¶ 29). During her meeting with Baines, Yancy's total focus was on ensuring there was some medical intervention for Baines before Baines got home, and Yancy contacted Dr. Bradford with the City's Employee Assistance Program ("EAP"). (*Id.*, ¶ 30). With Baines' permission, Dr. Bradford contacted Baines' therapist, Dr. Prothro-Wiley. (*Id.*, ¶ 31).

Dr. Prothro-Wiley testified that on December 6, 2016, she received a phone call from the City stating that Baines was suicidal, and they were sending Baines to Dr. Prothro-Wiley at Baines' request. (Doc. No. 264-1, ¶ 32). EAP employee Derris Mitchell drove Baines to Dr. Prothro-Wiley's office and handed Baines off directly to Dr. Prothro-Wiley, noting that Baines allegedly had made a statement about thinking about shooting herself. (*Id.*, ¶ 33). At Dr. Prothro-Wiley's direction, on December 6, 2016, Baines went on a medical leave, initially for two weeks. (*Id.*, ¶ 35). However, as explained herein, following December 6, 2016, Baines never returned to work.

On December 6, 2016, Atlanta Police Officer Shaun Houston was called to Yancy's office and told that Baines said she wanted to shoot herself. (Doc. No. 264-1, ¶ 36). Officer Houston had to ensure the safety of those in the building and other employees. (*Id.*, ¶ 37). He relayed to his Lieutenant that Baines' building and parking deck access cards had been disabled for two weeks. (*Id.*, ¶ 38).

### E. The City Required Baines To Submit to a Fitness for Duty Examination before Returning to Work.

Then-City Attorney Cathy Hampton (Baines' Department Head) was brought up to speed on what happened on December 6, 2016. (Doc. No. 264-1, ¶ 39). Based on Hampton's conversation with HR Commissioner Yancy, "There was a real concern for not just the safety of [Baines] but the safety of others. There was a threat

6

for her to shoot herself. So you can imagine the concern about a gun. And I just remember the fear. I remember the fear." (*Id.*, ¶ 40).

On December 19, 2017, Baines sought an extension through January 26, 2017 of the FMLA leave she began on December 6, 2016. (Doc. No. 264-1, ¶ 50). On the form she completed, Baines indicated she had "a serious health condition which renders me unable to perform my essential job functions." (*Id.*, ¶ 51). Baines listed her essential job functions as, "analyze complex legal issues." (*Id.*, ¶ 52). Baines also noted her work hours were from Monday through Friday from 8:30 a.m. until 5:30 p.m., *i.e.*, full-time. (*Id.*, ¶ 53). On the form, Baines' therapist Dr. Prothro-Wiley wrote, "[Patient] cannot cognitively process for her legal cases due to stress, fatigue, insomnia and acute anxiety." (*Id.*, ¶ 54 (emphasis added)). She also wrote, "[Patient] suffers with anxiety, depression, cognitive dissonance, and physical fatigue from her depression." (*Id.*, ¶ 55).

Baines requested to return to work on February 27, 2017. She faxed a form to the City, signed by Dr. Prothro-Wiley, summarily directing, "[Patient] to return to work on 2/27/17 with restrictive conditions (15 to 25 hours) per week until 1 month assessment." (Doc. No. 264-1, ¶ 56). Baines also faxed a portion of a form to the City with Dr. Prothro-Wiley's notation, "[Baines] will return to work on 2/27/17. Her leave will be extended to this time due to her increased depression, anxiety, and

stress." (Doc. No. 298 at 75:20-77:1 and Exhibit 20 thereto). The partial form indicated Baines would return part-time. (*See id.*).

Regarding those notes summarily authorizing Baines' return to work, Baines' Department Head (City Attorney Cathy Hampton) testified, "I remember hearing there was a document that didn't address the concerns about safety." (Doc. No. 264-1, ¶ 58). Hampton decided Baines needed to submit to a fitness for duty exam before returning to work and explained her decision as follows: "that was a joint decision. But at the end of the day, I'm the final decisionmaker for my department, and I'm responsible for the safety of the folks who were there working in that department. So unless you feel comfortable—and I didn't feel comfortable at that time that the safety concerns had been covered . . ." (*Id.*, ¶ 59). Hampton's first concern was about Baines' own safety, and her second concern was about the safety of others. (*Id.*, ¶ 60). Last, Hampton had some concern about whether Baines was ready for the rigors of a busy litigation practice, but safety was a bigger concern for her. (*Id.*, ¶ 61).

Therefore, on February 24, 2017, HR Commissioner Yancy sent a letter to Baines, informing her that she would be required to submit to a fitness for duty exam; that the City would pay for the exam; and that Baines would be on paid leave. (Doc. No. 264-1, ¶ 64). The City informed Baines that if the results of her fitness for duty exam were satisfactory, "you will be reinstated to your prior position." (*Id.*). The

City also explained that if the exam did not result in a satisfactory release, the City would reassess Baines' employment status. (*Id.*).

**F.  Dr. Ojelade Determined that Baines Was Not Fit To Return to Work, and the City Notified Baines of Her Options.**

Dr. Ifetayo Ojelade (a third-party who is not employed by the City) examined Baines on March 28, 2017. (Doc. No. 264-1, ¶ 65). Dr. Ojelade has a Ph.D. in counseling psychology. (*Id.*, ¶ 66). She is licensed and board certified. (*Id.*).

Dr. Ojelade gathered information from the City's Psychologist, Dr. Bradford. (Doc. No. 264-1, ¶ 68). Dr. Ojelade had Baines complete a written personality assessment, and she conducted a face-to-face examination of Baines. (*Id.*, ¶ 69). Dr. Ojelade also spoke with Baines' therapist, Dr. Prothro-Wiley, to obtain additional information. (Doc. No. 253-4 at 80:2-80:6; 102).

Dr. Ojelade determined that Baines was not fit to return to work in the City's Legal Department. (*See* Doc. No. 264-1, ¶ 71). Dr. Ojelade wrote, "Thus, Ms. Baines is deemed not fit to return to her current work environment." (*Id.*). At her deposition, Dr. Ojelade clarified that it was Baines—not the work environment—that was the problem; she testified, ". . . These problems are not a work environment problem. They are a Tamera Baines problem. And so wherever she goes, whatever she does, she's going to take her baggage with her." (*Id.*, ¶ 72).

On May 25, 2017, Director of HR Pam Beckerman personally met with Baines to discuss the fitness for duty exam results. (Doc. No. 264-1, ¶ 73). That same day,

Beckerman also sent Baines a letter, explaining that the exam found Baines to be unfit for duty and that Baines would remain on administrative leave with pay. (*Id.*, ¶ 74). Beckerman also outlined Baines' options: (1) work with Beckerman to identify other City positions for which Baines was qualified; and/or (2) seek a second fitness for duty evaluation to be completed by a psychologist of Baines' choosing. (*Id.*, ¶ 75). Baines chose to seek a second fitness for duty exam from Dr. Ackerman. (*Id.*, ¶ 76). The City provided Dr. Ackerman with information he requested, such as Baines' performance evaluations. (*Id.*, ¶ 77).

### G. After Baines Opened a Law Practice and Practiced Law in a Non-City Case, without City Approval, the City Terminated Her Employment.

On July 10, 2017, Deputy City Attorney Patrick received a call from an Attorney Jordan Aldridge who asserted that on June 30, 2017 (while Baines was on paid leave), Baines entered an appearance on behalf of a plaintiff in Clayton County Magistrate Court, and Aldridge asserted he had not been able to reach Baines for weeks. (Doc. No. 264-1, ¶ 79). The problem is that Baines was not representing the City in the Clayton County case, and the City knew nothing about it. (*Id.*, ¶ 80). A City Ordinance prohibits the City's internal lawyers from practicing law externally without permission. (*Id.*, ¶ 81, citing City Ordinance §§114-436, 2-811 and 2-820, among other things)).

Patrick escalated the issue to then-City Attorney Jeremy Berry. (Doc. No. 264-1, ¶ 82). Berry had only begun working for the City in May 2017. (*Id.*, ¶ 83).

10

Berry did not know Baines. As Berry testified, he was not aware of <u>any</u> discrimination or harassment issues involving Baines. (*Id.*, ¶ 84). He did not know Baines had filed an EEOC charge until <u>after</u> she had been terminated. (*Id.*, ¶ 85). While Berry was aware Baines was on administrative leave, he had no idea why, and he had no idea she needed to pass a fitness for duty exam to return. (*Id.*, ¶ 86).

Berry reached out to Attorney Gevertz (who generally assisted the City in employment matters), and Gevertz asked Baines about her outside legal practice. (Doc. No. 264-1, ¶ 87). Baines directed inquiries to her attorney who wrote the following to Gevertz:

> Davis (sic),
> As I mentioned, [Baines] assisted one person receive (sic) a domestic violence/stalking protective order as a favor to her therapist. She did not realize this would be an issue because apparently it is common practice in the City's law department. For example, Veronica Hoffler was forced to represent a paralegal's brother in a creditor matter even though she did not want to. She also represented someone in a traffic matter in municipal court. Others have done similar things, including Lashawn Terry and Akua Coppock.
> Thanks,
> Cheryl

(*Id.*, ¶ 88).

The City investigated the alleged comparators. For example, Joan Clarke reached out to some of the individuals in Baines' Counsel's email. (Doc. No. 264-1, ¶ 90). Berry was either unaware of various, alleged comparators at the time he made

11

his termination decision, or his understanding was that they had not done anything similar to Baines. (*Id.*, ¶ 91).

What Berry did learn is that on June 23, 2017, Baines incorporated her own law firm through the Secretary of State's office. (Doc. No. 264-1, ¶ 93). He also learned that on June 30, 2107, Baines entered a notice of appearance in the matter about which Patrick had been contacted. (*Id.* at 94). Therefore, Berry decided to terminate Baines' employment for her outside legal practice in violation of a City Ordinance. (*Id.*, ¶ 95).[2] On July 18, 2017, the City notified Baines that her services were no longer needed. (*Id.* ¶ 96).

## Course of Proceedings and Disposition Below

### A. Although an Attorney, in Her EEOC Charge, Baines Did Not Describe Anything Sexual or Sex-Based, and She Left Blank the Boxes that Would Signal As Much.

Baines is a former Senior Assistant City Attorney with the City of Atlanta ("the City"). On or about March 3, 2017, while she was on administrative leave, Baines filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination—not sexual harassment. (*See* Doc. No. 249-1 and Exhibit B thereto; *see also* Doc. No. 264-1, ¶ 98). The EEOC charge included various boxes Baines could check to allege "discrimination

---

[2] In responding to Fact No. 95, Baines disputed that her outside legal practice violated the statute.

based on . . ." (Doc. No. 249-1 and Exhibit B thereto). The categories included race, color, sex, religion, national origin, retaliation, age, disability, genetic information and other. (*Id.*). The directions instructed Baines to "check appropriate boxes [plural]," and although she is an attorney, Baines chose to check only the disability box. <u>She did not check the box for "sex."</u> (*Id.*). <u>Baines did not check the box to assert that the City had engaged in any type of "continuing action."</u>

In the part of the charge where Baines could use her own language to describe the issue, she wrote nothing about <u>sex</u> or <u>sexual</u> harassment, and she did not describe anything sexual that happened to her; she wrote the following:

> I. I work for the City of Atlanta Law Department as an attorney. On December 6th, 2016, I went out on medical leave due to harassment at the workplace triggering effects on my disability. When I was out on leave, the City required me to work on cases, threatening that I would be fired if I did not. When I attempted to return to work, the City would not let me.
>
> II. The employer stated I was not allowed to return to work because it did not believe my doctor that I was fit to return to work.
>
> III. I believe I was discriminated (sic) in violation of the Americans with Disabilities Act, and Title VII of the Civil Rights Act of 1964.

(*Id.*).

## B. **From Her Charge, the City Did Not Glean That Baines Was Alleging Sexual Harassment.**

Underscoring the fact that there was no allegation of sexual harassment in Plaintiff's first EEOC charge, the January 24, 2018, position statement responding

to that charge contained no reference to sexual harassment. (*See* Doc. No. 249-1 and Exhibit D thereto). Instead, where the position statement addressed the harassment allegation, it addressed disability harassment. (*See id.* at 6 (arguing, "Charging Party Cannot Establish a Claim for Disability Harassment")). Disability harassment was the most the attorney responding to the charge could glean from the charge. (*See id.*). The position statement also correctly noted, "Charging Party provides no details regarding the nature or extent of the alleged harassment she experienced." (*Id.* at 7). Thus, based on the language in the charge and the only box that was checked ("disability"), a seasoned employment attorney responding to it did not glean that Baines alleged sexual harassment in her charge. (*See id.*).

On November 3, 2017—more than 180 days after filing her original EEOC charge, and well over 180 days after December 6, 2017, Baines' last day in the office—Baines "amended" her EEOC charge.

## C. **The Magistrate Judge Recommended that Summary Judgment Be Granted to the City on Most of Baines' Claims.**

The Report & Recommendation ("R&R") recommended that summary judgment be granted to the City on Baines' Section 1983 sexual harassment claim because Baines did not meet the two-year statute of limitations for that claim. (Doc. No. 299 at 22-29). The R&R reasoned that Baines did not file her District Court Complaint, alleging Section 1983, until January 15, 2019, but Baines went on leave on December 6, 2016 and did not return to the work environment thereafter. (*Id.* at

22). The R&R also explained that the 2017 incidents Baines alleged "simply do not amount to actionable acts of sex-based intimidation, ridicule, or insult" and were not part of the alleged sexually hostile work environment. (*Id.* at 27).

Because the Section 1983 claim was untimely, the R&R did not reach the City's (or Shahar's) other arguments as to why Baines' Section 1983 claim fails. (*See* Doc. No. 299 at 29). And by the time of the R&R, Baines had not raised any arguments: (1) regarding her tolling agreement with the City (and the City's then-counsel, the undersigned, did not know about the tolling agreement); or (2) that her mental illness tolled the statute of limitations. (*See, e.g.,* Doc. No. 264 at 4-8 (Baines responding to the time-bar issues raised in the City's Motion for Summary Judgment but failing to raise any argument regarding a tolling agreement or equitable tolling)).

The R&R also recommended that summary judgment be granted to the City on Baines' ADA failure to accommodate claim based on Baines' contention that she should have been allowed to return to work part-time in February 2017. (Doc. No. 299 at 47-49). The R&R reasoned that Baines was not entitled to the accommodation of her choice, and the City did grant Baines accommodations such as: (1) FMLA leave in December 2016 and prior; and (2) paid administrative leave while Baines underwent various fitness for duty evaluations; the R&R pointed out that this leave also could have allowed further healing. (*Id.*, *citing Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) ("a leave of absence might be a reasonable accommodation in

some cases")). And the City offered Baines the additional accommodation of working with her to find another position for which she might qualify after being found unfit to return to the current work environment. (*Id.* at 48-49). As the R&R explained, Baines failed to even respond to the City's arguments that she received and was offered any number of reasonable accommodations—just not the accommodation of her choice. (*Id.* at 49).

The R&R also recommended that summary judgment be granted to the City on Baines' FMLA, ADA, and Title VII retaliation claims flowing from the July 2017 termination of her employment. (Doc. No. 299 at 57-60, 64-66). The R&R reasoned that Baines' proof of causation was thin and that she presented no evidence of pretext. (*Id.*). Regarding causation, the R&R rejected Baines' argument that there was close temporal proximity between Baines' protected activity (going on FMLA leave, seeking to return to work part-time, filing an EEOC charge) and the termination. (*Id.* at 59). The alleged protected activity occurred between four and seven months prior to Baines' termination. (*Id.*) Second, the R&R noted that Berry was not aware of Baines' protected activity, and Baines' argument that Gevertz's knowledge of her protected activity influenced his legal advice to Berry was "thin." (*Id.*)

Assuming, *arguendo*, Baines supported a prima facie retaliation case, the R&R determined that the City put forth a legitimate, non-retaliatory reason for her

16

termination. (Doc. No. 299 at 60-). The R&R explained, "[Baines] does not dispute that the ultimate decision to terminate her employment came from then-City Attorney Berry, that she engaged in legal practice for a client that was not the City, that she incorporated her own law practice, that attorneys employed by the City are generally not permitted to engage in the outside practice of law, and that Berry's stated purpose for termination was his determination that [Baines] violated those rules." (*Id.* at 64). Baines did not squarely address any of these points, and the R&R concluded, "the issue of pretext is not close and clearly warrants summary judgment for the City especially as it relates to the termination decision." (*Id.* at 60).

The R&R also found "meritless" Baines' arguments that the fitness for duty exam was not job-related and consistent with business necessity. (Doc. No. 299 at 60). The R&R found that "reports about [Baines'] potential suicide threat raised a legitimate concern about workplace safety." The R&R noted that three different co-workers (Shahar, Addison, and Yancy) each reported that Baines indicated wanting to commit suicide on December 6, 2016, and Shahar reported that Baines indicated wanting to do so with a gun. (*Id.* at 62). The R&R easily disposed of Baines' arguments that she did not discuss wanting to commit suicide on December 6, 2016, that her therapist had released her to return to work part-time in 2017, and that the City could have just spoken with her therapist about the release. (*Id.* at 62-64). Thus,

17

whether couched as discrimination or retaliation, the R&R found no basis for Baines' claims related to the fit for duty exam.

The R&R also recommended that summary judgment be granted to the City on Baines' claim that the City interfered with her FMLA rights by failing to return her to work after her therapist released her to work part-time. (Doc. No. 299 at 74-76). By the time of the release, however, Baines' FMLA leave expired, and she was placed on paid administrative leave to seek a fitness for duty exam. The R&R explained that Baines was seeking to return to part-time work, but her previous position had been full-time, and the FMLA did not require a return to such a different position. (*Id.* at 74-75, *citing* 29 C.F.R. § 825.702(c)(4) (the FMLA only requires restoration to "the same of equivalent position") *and O'Haver v. Orthopaedic Assocs. of Wis., S.C.*, No. 15-CV-240, 2015 WL 5714231, at *3 (E.D. Wis. Sept. 29, 2015) (dismissing an FMLA interference claim grounded in an employer's failure to restore a previously full-time employee to a part-time position after taking leave)). Second, the R&R concluded that the City did not restore Baines to her position—not because she had taken FMLA leave but because of safety concerns and then because she opened a law firm and began practicing law without the City's permission and while on paid leave despite moonlighting prohibitions. (Doc. No. 299 at 75-76). Therefore, the R&R recommended that summary judgment be granted to the City on Baines' FMLA interference claim.

The R&R did recommend that two claims against the City go to trial: (1) Baines' Title VII claims; and (2) Baines' FMLA interference claim to the extent Baines argued that the City required her to perform substantive work while she was on FMLA leave. (Doc. No. 299).

### D. **Baines Was Left with No Claims To Try.**

For the first time in her 80-page Objections to the R&R, Baines argued that the City entered a tolling agreement with her, which tolled the statute of limitations on her Section 1983 sexual harassment claim. (Doc. No. 304 at 44-45). This was news to the City's Counsel since that was not the same Counsel who entered the tolling agreement with Baines. (Doc. Nos. 175-76). And for the first time in her Objections to the R&R, Baines also argued that her mental illness equitably tolled her statute of limitations. (Doc. No. 304 at 44-45).

The District Court reviewed Baines' and the City's Objections to the R&R. (Doc. No. 320). The District Court adopted the R&R and denied the City's Motion for Summary Judgment with respect to Baines' FMLA interference claim that the City required Baines to work while on FMLA leave. (*Id.*). Baines settled that claim for nuisance value. (*See* Doc. No. 344).

With respect to Baines' Section 1983 claim, the District Court did not analyze (and therefore did not consider) the tolling agreement and equitable tolling arguments Baines raised for the first time in her Objections to the R&R. (Doc. No.

320). However, in granting summary judgment to the City on Baines' Section 1983 sexual harassment claim, the District Court agreed with the City's arguments that Baines' Section 1983 claim was not cognizable. (*Id.*). Finally, the District Court declined to adopt the R&R regarding whether Baines exhausted her administrative remedies with respect to her Title VII claim because her March 2007 EEOC charge did not raise sexual harassment, and her November 2007 "amendment" was not amplifying or clarifying that non-existent claim. (*Id.*).

### E. **The District Court Denied Baines' Motion for Sanctions.**

This case has been over-litigated, and it has been contentious at times. (*See, generally,* Docket and number of docket entries). Baines moved for sanctions against the City flowing from an "*ex parte*" conversation that the City's former law firm, Baker Donelson, had with Dr. Prothro-Wiley, a fact witness in this case. (Doc. No. 179). The District Court denied Baines' Motion for Sanctions against the City (as well as against Baker Donelson and Shahar). (Text Only Docket Entry Jun. 2, 2021).

## SUMMARY OF ARGUMENT

This Court lacks jurisdiction over this appeal because Baines is not appealing a final judgment on all claims. Therefore, Baines' instant appeal should be dismissed with prejudice.

Baines' Section 1983 Equal Protection claim against the City fails because: (1) it is untimely; (2) there was no City policy or practice to sexually harass; (3)

Baines did not show that Hampton, Berry, Yancy, or Gevertz were policymakers within the meaning of local law; (4) the undisputed evidence shows responsiveness—not deliberate indifference—to Baines' alleged sexual harassment complaints; and (5) to the extent Baines alleges retaliation, that is not within the ambit of Section 1983.

Baines did not exhaust a Title VII sexual harassment claim because her March 3, 2017 EEOC charge did not check the box for sex or a continuing violation, and it did not explain that anything sexual or sex-based happened to her. Baines' November 2017 "amendment" to her EEOC charge did not exhaust sexual harassment because it was filed more than 180 days after any alleged sexual harassment. And that amendment did not relate back to the March 3, 2017 EEOC charge because to the extent the November 2017 amendment alleged sexual harassment (it did not do so either), that was a new claim—that was not clarifying or amplifying a claim actually raised in the March 3, 2017 charge.

Baines' claims (ADA or otherwise) flowing from the City's requirement that she submit to a fitness for duty exam fail because the exam was job-related and consistent with business necessity. The City had received reports from three different employees—Shahar, Addison, and Yancy—that on December 6, 2016, while at work, Baines expressed a desire to kill herself. Shahar's report was that Baines had

threatened to do so with a gun. Under those circumstances, the City had legitimate safety concerns, justifying the independent fitness for duty exam.

Baines' retaliation claims fail whether regarding the fitness for duty exam as retaliation or Baines' eventual termination as retaliation. Baines' employment was terminated because while she was on paid leave, she opened up a law practice that she registered with the Secretary of State. She then immediately began practicing law in a case the City knew nothing about. A third party who was trying to reach Baines about the case notified the City, which had a rule against such unapproved outside practice of law. A brand new City Attorney who did not even know about Baines' prior protected activity terminated Baines for her unapproved law practice in violation of the rule. And Baines never denied opening the law practice or practicing law on her own while being on paid leave, nor did she claim the City was aware of her law practice.

Finally, Baines has no FMLA interference claim based on the City's decision not to bring her back to work part-time. Her job with the City was never part-time. And there were good reasons the City submitted Baines for a fitness for duty exam (instead of bringing her back to work part-time) and accommodated her with paid leave.

For all of these reasons, as explained more fully herein, the District Court's decisions should be affirmed.

## ARGUMENT

Summary judgment is appropriate when the evidence before a court demonstrates that "there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court reviews *de novo* a district court's grant of summary judgment. *Tinney v. Shores*, 77 F.3d 378, 380 (11th Cir. 1996).

## I. SUMMARY JUDGMENT SHOULD BE AFFIRMED ON BAINES' SECTION 1983 CLAIM.

### A. Baines' Section 1983 Claim against the City Is Time-Barred.

For the reasons outlined in the Magistrate Judge's Report & Recommendation ("the R&R"), as explained in the "Course of Proceedings and Disposition Below," *supra*, Baines' Section 1983 claim against the City is time-barred. On appeal, Baines merely repeats the same arguments the R&R rejected below—that the alleged sexual harassment continued into 2017, making her 2019 complaint timely. (Appellant Brief at 21-23). But what Baines alleges happened in 2017 is about retaliation—not sexual harassment. And there is no such thing as a Section 1983 retaliation claim. To the extent Baines alleges sexual behavior or sex-based behavior after 2016, the R&R found that did not rise to the level of actionable severe or pervasive sexual harassment. *See also Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (explaining that certain actions—here the FMLA leave and Baines' removal

23

from the workplace—cut off any continuing violation, allowing the second set of actions to be assessed separately).

Further, Baines did not raise the following Section 1983 timeliness issues <u>until her Objections to the Magistrate's R&R</u>:

- the tolling agreement between her and the City; and

- whether her mental illness tolls her statute of limitations.

Therefore, as the City argued below and in *Baines I*, Baines waived those arguments. *See Williams v. McNeil*, 557 F.3d 1287 (11th Cir. 2009) (affirming the dismissal of a habeas petition as untimely and ruling that a district court has discretion to decline to consider a party's argument first raised in the party's objections to the magistrate judge's report and recommendation and finding that the district court did not abuse that discretion). Allowing Baines to raise those arguments for the first time in her Objections to the R&R undermines the benefit of the Magistrate Judge's role and the efficiency of the judicial system.

And the new argument that Baines was suffering from such severe mental illness that she could not timely file her Section 1983 claim (despite having lawyers) flies in the face of Baines' claim that at that same time, she should have been an Assistant City Attorney. That position required her to "cognitively process for her legal cases" and timely file documents with courts—the concern Hampton had regarding whether Baines was ready for the rigors of a busy litigation practice.

Baines' argument also begs the question how Baines could appropriately assess what was happening to her during that timeframe, *i.e.*, whether she was perceiving her co-workers' alleged behaviors accurately. Baines should not be allowed to raise these responses to the time-bar defense since she did not raise them in her original response to the City's Motion for summary judgment.

### B. <u>Baines Has Not Shown a "Widespread Custom" or "Policy" of Sexual Harassment.</u>

Alternatively, as the City argued below, Section 1983 is not the correct vehicle for claims like Baines'. To hold a city liable under Section 1983, a plaintiff must establish that her rights were violated pursuant to a "custom" or "policy" of that city. *See Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690-91 and fn. 7 (1978) (allowing suit against a government entity that had an official policy of requiring pregnant women to take unpaid leave before they were medically unable to work). Here, if anyone sexually harassed Baines, that would have been <u>against</u> City Policy—not pursuant to City Policy. (*See, e.g.,* Doc. No. 265-10 at 30 and Exhibit 38 thereto, the Sexual Harassment Policy, prohibiting sexual harassment; Doc. No. 265-15 at 24-25 and Exhibit 38, Policy and Code Section prohibiting sexual harassment).

Baines also did not present any evidence suggesting a <u>widespread custom</u> of ignoring sexual harassment at the City. In fact, Baines did not present evidence that anyone else had been subjected to sexual harassment. It is undisputed that <u>no other employees</u> accused Shahar, Rashad, or Burnette of sexually harassing them. (*See,*

25

*e.g.,* Doc. No. 264-1, ¶ 107 (no dispute that Baines was not aware of anyone else claiming Shahar sexually harassed or mistreated them)). Thus, Baines failed to present any evidence of *Monell* liability. *See Monell*, 436 U.S. at 690-91.

## C. <u>The Alleged Wrongdoers Were Not "Policymakers" within the Meaning of the Law, and Section 1983 Liability Cannot Attach to Their Actions.</u>

Baines claims various managers in the City's Department of Law (Hampton and Berry[3]), Human Resources (Yancy) and outside counsel (Gevertz) should have handled her alleged sexual harassment complaints better. (*See* Appellant Brief at 27-28). However, Baines did not point to any local law showing that these individuals (none of whom are still with the City) were policymakers akin to a mayor or a city council. A "municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondent superior theory." *Monell*, 436 U.S. 658, 691 (1978). Whether a particular official has final policymaking authority is a question of state law. *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701 (1989) (finding that a jury instruction that the Dallas Independent School District acts through its board of trustees and/or its superintendent and principals was "manifest error" and remanding); *St. Louis v.*

---

[3] As indicated, *infra*, Baines' Section 1983 retaliation claim is not cognizable. Berry was not hired until Baines had been on paid administrative leave for quite some time, and Berry is not accused of anything except for retaliation. Therefore, it is baffling that Baines alleges Berry violated her Section 1983 Equal Protection right to be free from sexual harassment.

*Praprotnik*, 485 U.S. 112, 124 (1988); *Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989) (affirming dismissal of claims against a county, which could not be held liable under respondeat superior or policy grounds, and the hospital did provide treatment to the patient).

Because Baines failed to cite to any City Ordinance or Charter below (or even in her Appellant Brief) to prove that these alleged wrongdoers were final policymakers within the meaning of local law, it is too late for her to do so now, and her Section 1983 claim against the City fails. Her arguments that these individuals were "the highest management" in the Law Department and the Human Resources Department are legally insufficient, and Section 1983 liability cannot flow from their alleged mishandling of her alleged sexual harassment complaints. *See Jett*, 491 U.S. 701; *Praprotnik*, 485 U.S. at 124; *Free*, 887 F.2d at 1557.

Baines even alleges that because the City has defended itself against Baines' instant claims, that is a Section 1983 violation. (Appellant Brief at 30). She alleges that because the City defended the alleged harassers' depositions, that is a Section 1983 violation. (*Id.*). Again, the City's outside counsel is not the Mayor or City Council, and the taxpayers deserve for the City to defend itself against time-barred, specious, meritless, fictitious claims.

### D. __Baines Asserts that the Individuals at Issue Were Responsive.__

Substantively, Baines does not show these individuals ignored her Constitutional rights. Instead, Baines' own filing belies her contention that these individuals ignored her sexual harassment complaints. Baines contends that:[4] (1) City Attorney Cathy Hampton retained outside attorney David Gevertz, who investigated Baines' concerns about Rashad; and (2) Gevertz issued a mutual stay-away order to Baines and alleged sexual harasser Rashad. (Doc. No. 264-2, ¶¶ 30, 32; *see also id.*, ¶ 242 (asserting that Gevertz investigated Baines' "sexual harassment and stalking allegations")).

Baines also contends that after complaining about alleged harasser Shahar to Hampton, Hampton directed that Baines did not have to meet with Shahar alone. (*Id.*, ¶ 75). Baines also contends that in 2017, while she was on FMLA leave, Gevertz was still offering to interview her about her allegations of a hostile work environment. (*Id.*, ¶ 186). Thus, Baines has denied that the alleged Section 1983 actors were deliberately indifferent to her right to be free of sexual harassment or that they "ignored" her complaints as alleged now in her Appellant Brief.

### E. __Section 1983 Does Not Cover Baines' Retaliation Complaints.__

---

[4] The City denies that Baines complained of sexual harassment to Hampton, Gevertz, or Yancy. To the extent Baines used the words "hostile work environment" in communications with Gevertz or Yancy after Baines went on leave, there was no indication that Baines referred to a sexually hostile work environment. However, Baines cannot ignore her sworn statements that she did complain to these individuals about sexual harassment <u>and that they were responsive to her complaints</u>.

28

Finally, to the extent Baines alleges adverse actions or a hostile work environment resulted from her sexual harassment complaints, Section 1983 cannot remedy such "retaliation" allegations. *See, e.g., Owens v. Jackson Cnty. Bd. Of Educ.*, 561 F. App'x 846, 848 (11th Cir. 2014) (unpublished) ("a claim of gender-based retaliation 'simply does not implicate the Equal Protection Clause'"), *citing Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) ("A pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause.") and *Ratliff v. DeKalb Cnty., Ga.*, 62 F.3d 338, 340 (11th Cir. 1995); *see also Wilcox v. Lyons*, 970 F.3d 452 (4th Cir. 2020) (affirming the dismissal of a county attorney's claim that she was retaliated against under Section 1983/the Equal Protection Clause when she was terminated because she complained of sex-based discrimination; such a retaliation claim is not cognizable under Section 1983). Thus, to the extent Baines argues that some individuals took actions because she engaged in protected activity or exercised her rights, that is not a Section 1983 claim.

## II. SUMMARY JUDGMENT SHOULD BE AFFIRMED ON BAINES' TITLE VII SEXUAL HARASSMENT CLAIM.

Before filing a Title VII suit against an employer, a plaintiff must exhaust her administrative remedies. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). This requires filing a timely EEOC charge prior to filing suit. 42 U.S.C. § 2000e-5(e)(1). In Georgia, a charge must be filed within 180 days after the alleged

29

unlawful practice. *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2004); 29 U.S.C. § 626(d)(1)(A); 42 U.S.C. § 2000e-5(e)(1).

**A. Baines Failed To Exhaust Sexual Harassment Claims in Her March 3, 2017 EEOC Charge.**

Here, Baines failed to exhaust her administrative remedies because her March 3, 2017 EEOC charge did not allege sexual harassment. (*See* Norman Dec., Doc. No. 249-1, ¶ 4 and Exhibit B thereto). Baines' instant sexual harassment claim regarding Shahar and Rashad is not "like or related to" the disability allegations in her March 3, 2017 EEOC charge.

On that EEOC charge, Baines, a lawyer, checked the box for disability, but she did not check the box for "sex." She also did not place a time period in the place on the charge to indicate the dates of the actions; thus, there was no indication that Baines wanted to take action on anything that occurred prior to December 6, 2016 (when she indicated she went on disability leave). (*See id.*). Although Baines now alleges that sexual harassment continued for over a year and beyond the date she filed the March 3, 2017 EEOC charge, Baines did not check the box for "continuing violation."

As indicated in the Course of Proceedings and Disposition Below, *supra*, in the part of the charge where Baines could use her own language to describe the issue, Baines wrote nothing about sex generally or about anything sexual specifically. Baines did not allege, as she does now, that Shahar placed her hand on Baines' thigh,

30

moving it near her groin more than 20 times. (*See* Appellant Brief at 4). Rather, Baines wrote about going on medical leave and not being allowed to return to work because the City did not believe her therapist that she was fit to return to work.

Although the word "harassment" is in the charge, that is included as background information (not a substantive claim), and there is no indication that Baines referred to <u>sexual</u> harassment (as opposed to disability harassment or general workplace harassment). (*See id.*). Although there is a bare allegation of a Title VII violation, there is no indication Baines was referring to sexual harassment (as opposed to race, color, religion, or national origin discrimination or retaliation). (*See id.*).

Even lay people's charges are not construed as liberally as Baines advocates here. In *Horace v. ARIA*, No. 23-12414, 2024 WL 1174398 (11th Cir. Mar. 19, 2024), this Court recently affirmed a 12(b)(6) dismissal of <u>gender</u> discrimination claims for failure to exhaust administrative remedies where the plaintiff's charge checked the race box but not the gender box, did not describe any gender discrimination where it set out the particulars, and the charge "made no mention of gender at all, much less alleged gender discrimination." *See also Davenport v. Edward D. Jones & Company, L.P.*, 891 F.3d 162 (5th Cir. 2018) (affirming summary judgment to the employer and finding that an EEOC charge that alleged "being sexually harassed" did not allege <u>constructive discharge based on sexual</u>

31

harassment); *Vela v. Village of Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000) (affirming summary judgment to the village and explaining that the plaintiff's claim of sex <u>discrimination</u> in her EEOC charge did not exhaust her claim of sexual <u>harassment</u> in her federal complaint; the two claims were not "like or related to" each other). Likewise, here, nothing in Baines' March 2017 EEOC charge accuses Shahar of touching her thigh near her groin or Rashad of groping her as alleged now in the Appellant Brief.

Baines' mere writing the word "harassment" in her EEOC charge and then later writing the words "Title VII" cannot exhaust the instant <u>sexual</u> harassment allegations. *See Ortiz v. Waste Mgmt., Inc.*, 808 Fed.Appx. 1010 (11th Cir. 2020) (unpublished). In *Ortiz*, this Court affirmed the dismissal of a male plaintiff's Title VII sexual harassment suit for failure to exhaust administrative remedies. In his EEOC charge, Ortiz checked the box for "retaliation" and for "other (specify below)" but (just like Baines) Ortiz did not check the box for "sex." *Ortiz*, 808 Fed.Appx. at 1012-13. In describing the issues, Ortiz alleged he was "retaliated against for constantly complaining about having my rights and dignity violated by [my co-worker]" and that the co-worker had recorded and circulated a video of Ortiz seated naked on the toilet. *Id.* at 1013. Ortiz specifically wrote that he believed he had been harassed, subjected to a hostile work environment, and retaliated against in violation of Title VII. *Id.* But the words "hostile work environment" and "Title

32

VII" did not exhaust a hostile work environment claim based on sex. In his suit, Ortiz alleged that his employer would have treated him differently and taken his complaint more seriously had he been female.

This Court explained, "in determining whether a complaint falls within the scope of the EEOC charge, we consider whether the complaint is 'like or related to, or grew out of, the allegations contained in the EEOC charge.'" *Ortiz*, 808 Fed.Appx. at 1014. This Court explained, "judicial claims that merely 'amplify, clarify, or more clearly focus' the allegations in the EEOC charge are permissible; but a judicial complaint may not assert 'allegations of new acts of discrimination.'" *Id.* The *Ortiz* Court held that the plaintiff's EEOC charge did not contain <u>factual allegations</u> that could be reasonably construed as a complaint about actions <u>based on his sex</u> and, therefore, his suit about sex discrimination constituted a claim <u>in addition to and significantly altering</u> the claim in his EEOC charge. *Id., citing Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000) (concluding that a reasonable investigation based on plaintiff's EEOC charge—which mentioned only discrimination and retaliation based on disability, not national origin—would not have encompassed retaliation based on complaints about national origin discrimination). This Court explained that the district court's dismissal of the complaint did not rest on a mere technicality of the plaintiff failing to mark the "sex" box (as Baines contends here) but took everything into account. *Ortiz*, 808

Fed.Appx. at 1014-1015. Likewise, here, taking everything into account, Baines'
March 3, 2017 Charge did not allege sexual harassment. *See id.*; *see also Horace*,
2024 WL 1174398; *Chanda*, 243 F.3d at 1225.

As the Magistrate Judge explained, "the administrative charge requirement
serves the important purpose of giving the charged party notice of the claim and
narrowing the issues for prompt adjudication." (Doc. No. 299 at 29). But here, after
reviewing Baines' charge, the City did not have notice that Baines was alleging
sexual harassment. Indeed, the City's position statement responding to that charge
contained no reference to sexual harassment. (*See* Norman Dec., Doc. No. 249-1 and
Exhibit B thereto). Instead, when the position statement addressed the harassment
allegation, it addressed disability harassment. (*See id.* at 6). As this Court has
explained, "[t]he purpose of this exhaustion requirement is that the [EEOC] should
have the first opportunity to investigate the alleged discriminatory practices to
permit it to perform its role in obtaining voluntary compliance and promoting
conciliation efforts." *Gregory v. Georgia Dep't of Human Resources,* 355 F.3d 1277,
1279 (11th Cir. 2004).

Thus, Baines' (false) cries in her Appellant Brief that the City was otherwise
aware she felt sexually harassed are of no moment because if Baines wanted to raise
such claims before the EEOC or in a subsequent lawsuit, those claims needed to be
raised in a timely EEOC charge. As the District Court ruled, Baines' Title VII sexual

harassment claim is barred. *See Wilkerson*, 270 F.3d at 1317; *see also* 42 U.S.C §2000e-5(e)(1); *Watson*, 324 F.3d at 1258; *Davenport*, 891 F.3d 162; *Vela*, 218 F.3d at 664; *Horace*, 2024 WL 1174398; *Ortiz*, 808 Fed.Appx. at 1014-1015; *Chanda*, 234 F.3d at 1225.

### B. <u>Baines' Untimely "Amendment" Does Not Cure Her Failure To Exhaust.</u>

In her November 3, 2017 "amendment" to her March 3, 2017 EEOC charge, Baines summarily asserted that her previous EEOC charged alleged sexual harassment; then the amendment went on to allege retaliation through termination. Baines' November 3, 2017 "amendment" to her March 2017 EEOC charge did not cure her failure to exhaust administrative remedies because the amendment: (1) was not clarifying or amplifying an allegation actually raised in the original charge; and (2) was filed more than 180 days after any alleged harassment took place.

An amendment can only cure technical defects in the original charge (such as the failure to verify a charge), or it can clarify or amplify claims actually raised in the original charge. *Fairchild v. Forma Sci.*, 147 F.3d 567, 574 (7th Cir. 1998), *citing* 29 C.F.R. § 1601.12(b). But an amendment cannot add brand new causes of action that relate back to the date of the original charge. *See Fairchild*, 147 F.3d at 575 (determining that a plaintiff's "amended" charge to add an age claim did not relate to or grow out of an original charge, alleging disability discrimination, and noting the original charge did not allege facts about age).

Here, Baines' amended November 3, 2017 charge baldly asserted that her March 2017 charge alleged sexual harassment. That was not clarifying or amplifying a claim actually raised in Baines' March 2017 charge. *See supra*. Nor was it even raising a new claim. Rather, Baines' bald assertion in her November 2017 charge was just a blatant attempt to contend that the March 2017 charge alleged something it did not. *See Fairchild*, 147 F.3d at 575. Therefore, the District Court decision granting summary judgment to the City on Baines' Title VII claim should be affirmed.

## III.    SUMMARY JUDGMENT SHOULD BE AFFIRMED ON BAINES' ADA CLAIMS.

To establish a prima facie case of disability discrimination, Baines must show: "(1) a disability, (2) that she was otherwise qualified to perform the job, and (3) that she was discriminated against based on her disability." *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). Here, Baines cannot show that she was qualified to perform the essential functions of her job or that she was discriminated against on the basis of her disability.

### A.    <u>Baines Cannot Show She Was Qualified To Perform as an Assistant City Attorney.</u>

Baines cannot show that preceding her termination, she could perform the essential functions of her job. In her own leave request in January 2017, Baines specifically acknowledged she was "unable to perform my essential job functions,"

which she listed as "analyze complex legal issues." Her own therapist wrote that Baines could not cognitively process for her legal cases.

Though Baines' therapist, Dr. Prothro-Wiley, released Baines to return to work in February 2017, she restricted Baines' work to 15-25 hours per week (Baines' job was full-time), and Dr. Prothro-Wiley did not explain what changed from the previous month that would allow Baines to process cognitively part-time. Dr. Prothro-Wiley also did not opine on whether Baines continued to be a threat to herself or others, which was a major concern for the City. Further, Dr. Ojelade concluded that Baines was not fit to return to work.

## B. The Fitness for Duty Exam Was Job-Related and Consistent with Business Necessity.

Baines also cannot show disability discrimination because the fitness for duty exam was both "job-related and consistent with business necessity" within the meaning of the ADA. *See* 42 U.S.C. §12112(d)(4)(A). By the time Hampton decided that Baines needed to submit to a fitness for duty exam, Hampton had received reports that: (1) Baines violated the No Contact Order by screaming in Rashad's face in Rashad's office; and (2) within days of the screaming incident, Baines told several City employees that she wanted to kill herself, including telling one employee she wanted to do so with a gun. Hampton was concerned about Baines' safety and the safety of others; she also was concerned about whether Baines was ready for the rigors of a busy litigation practice.

In *Owusu-Ansah*, this Court affirmed summary judgment to the employer in an ADA matter where the employee challenged the employer's requirement of a fitness for duty exam after a work meeting. *Owusu-Ansah v. The Coca-Cola Co.*,715 F.3d 1306 (11th Cir. 2013), *cert. denied*, 571 U.S. 1045 (Nov. 18, 2013). During the meeting, the employee spoke about past national origin discrimination he asserted he had endured at the company; banged his hand on the table where they sat; and said someone was "going to pay for this." *Id.* at 1309.

In concluding that the exam was job-related, this Court reasoned, "an employee's ability to handle reasonably necessary stress and work reasonably well with others is an essential function of any job." *Owusu-Ansah*, 715 F.3d at 1311, *citing Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th Cir. 2002) *and Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir. 1999) ("any case where a police department reasonably perceives and officer to be even mildly paranoid, hostile, or oppositional, a fitness for duty examination is job related and consistent with business necessity"). Although the employee worked mostly at home, this Court explained that the employer had a reasonable, objective concern about the employee's mental state, which affected job performance and potentially threatened the safety of its other employees. *Owusu-Ansah*, 715 F.3d at 1312. For the same reasons that this Court concluded the exam was job-related, it concluded the exam was consistent with business necessity, explaining that common sense plays a role.

*Id.* Likewise, here, where Baines violated a No Contact Order and mentioned wanting to kill herself multiple times, all close in time, common sense indicates Hampton's concern for Baines and others was objectively reasonable.

The ADA does not require employers to take a wait-and-see approach after receiving reports that an employee has expressed suicidal or homicidal ideations to co-workers. *See, e.g., Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203 (11th Cir. 2021) (a school system did not violate the ADA or FMLA when it ultimately terminated a teacher who threatened to kill herself and her son and explaining, "And the ADA does not require an employer to retain an employee who it believes behaved in a threatening and dangerous way—even if the employee's major depressive disorder is one reason, or the sole reason, that the employee engaged in that behavior"); *see also Lopez-Lopez v. Robinson School Dist.*, 958 F.3d 96 (1st Cir. 2020) (affirming summary judgment to an employer accused of ADA discrimination due to conditioning a teacher's continued employment on a medical exam and treatment after the teacher fell to the floor, cried, and claimed she wanted to kill herself upon being notified she was being suspended); *see also Rodriguez v. School Bd.*, 60 F.Supp.3d 1273 (M.D. Fla. 2014) (fitness for duty exam requirement was job-related and consistent with business necessity when the teacher mentioned she had contemplated suicide in the past).

Here, Baines denied making suicidal threats. But Baines' denials cannot defeat summary judgment where it is undisputed that multiple co-workers reported that Baines made suicidal threats at different times throughout December 6, 2016, and it is undisputed that only a day or so earlier, Rashad reported that Baines violated the No Contact Order by screaming in Rashad's office. *See Todd*, 998 F.3d at 1218 (affirming summary judgment to the employer on the employee's ADA discrimination and retaliation claims and FMLA interference and retaliation claims even though the plaintiff denied making some of the suicidal and homicidal statements at issue); *see also Scott v. Allied Waste Serv. of Bucks-Mont*, 2010 U.S. Dist. LEXIS 136202, Civil Action No. 10-105 (E.D. Pa. Dec. 23, 2010) (granting summary judgment to the employer on the plaintiff's ADA and FMLA claims following a psychological exam requirement; it did not matter that the plaintiff disputed asserting he wanted to commit suicide; it was undisputed that the employer received such reports).

In *Baldwin v. Sec'y of Veterans Affairs*, No. 19-11341, 2023 WL 3961405 (11th Cir. Jun. 13, 2023), this Court recently affirmed summary judgment to the VA because a fitness for duty exam was job-related and consistent with business necessity. There, a VA police officer accidentally shot his finger while off-duty and made bizarre comments about his personal life. Similar to Baines, the officer argued that VA employees conspired to make false, defamatory accusations against him to

support for the fitness-for-duty exam and that the VA improperly obtained and misrepresented his criminal history in the exam. But, this Court explained, "whatever its flaws, no reasonable jury could conclude that the fitness-for-duty exam was pretext for discrimination against Baldwin because of a disability . . ." Likewise, although the examiner received information about Baines' job duties (as opposed to a job description) and although the examiner received Rashad's report to Hampton (so that the examiner could understand the workplace dynamic), Baines has not shown how a jury could conclude the exam was pretext for disability discrimination. This is true even if, as Baines alleges, people other than decisionmaker Hampton made stray remarks about some people's mental health.[5] *See* 42 U.S.C. §12112(d)(4)(A); *Owusu-Ansah*, 715 F.3d 1306, *cert. denied*, 571 U.S. 1045; *Todd*, 998 F.3d 1203; *see also Lopez-Lopez*, 958 F.3d 96; *Rodriguez*, 60 F.Supp.3d 1273; *Scott*, 2010 U.S. Dist. LEXIS 136202; *Baldwin*, 2023 WL 3961405.

### C. Baines Cannot Support a Failure To Accommodate Claim.

Contrary to both the Magistrate Judge's R&R and the District Court decision, Baines contends the City denied her a reasonable accommodation when it failed to

---

[5] It appears Baines raises many arguments she did not raise in her initial summary judgment response. For example, she raises that Shahar was "a known liar" and that the City suborned perjury in cases. To the extent they were not raised below, at the initial response phase, they are not proper arguments before this Court.

follow her request (per her therapist's note) that she return to work part-time in February 2017. (Appellant Brief at 34-35).

However, a reasonable accommodation is one that allows the employee to perform the essential functions of her job. And as this Court has ruled, "an employee's ability to handle reasonably necessary stress and work reasonably well with others is an essential function of any job." *Owusu-Ansah*, 715 F.3d at 1309. Because Baines' therapist's note did not address Hampton's primary concern, safety, the note did not demonstrate that Baines could perform this essential function. There was no evidence Baines' therapist understood the reasons for the City's safety concerns, including the conflict in the workplace.

As explained, *supra and infra*, full-time work was an essential function of Baines' job. (*See, e.g.*, evidence, *supra*, from Baines that she worked from 8:30 a.m. to 5:30 p.m.; testimony from Hampton that an attorney was terminated during her tenure for not being able to work full-time; and testimony from Rashad, supra, that she worked from 8:30 a.m. to 5:30 p.m. but often more). A reasonable accommodation is one that allows an employee to perform the essential functions of his or her job. Thus, part-time work was not a reasonable accommodation.

Further, under the ADA, a qualified individual with a disability "is not entitled to the accommodation of her choice, but only to a reasonable accommodation." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir.

42

1997). Here, the City provided Baines with any number of reasonable accommodations and offered her another one, which she chose not to pursue. For example, following her FMLA leave (which was an accommodation), the City placed Baines on <u>paid</u> administrative leave to allow her to undergo a fitness for duty exam. As the R&R pointed out, the paid leave also allowed for further recovery. Once Baines did not pass the fitness for duty exam, the City continued Baines on paid leave, allowing her to take a second fitness for duty exam. The City (Pam Beckerman) also offered to help Baines identify other positions within the City for which Baines might qualify; this was an offer of yet another accommodation. But Baines could not dictate that she would return to her full-time job on a part-time basis without passing a fitness for duty exam; the City did not accept that proposed accommodation. Thus, the District Court correctly determined that the City had offered Baines any number of reasonable accommodations, and she could not support a failure to accommodate claim.

## IV. SUMMARY JUDGMENT SHOULD BE AFFIRMED ON BAINES' FMLA INTERFERENCE CLAIM.

Although Baines' therapist released her to return to work <u>part-time</u>, it is undisputed that Baines' job was <u>full-time</u>. (Doc. No. 262-3 (Baines' supervisor testifying that it was essential for Baines to work full-time); Doc. No. 264-1, ¶ 53 (Baines not disputing that she worked Monday through Friday from 8:30 a.m. to 5:30 p.m.); Doc. No. 256-1 at 23:20-24:4 (Rashad testifying that the law department

43

required its attorneys to work from 8:30 a.m. to 5:30 p.m. daily but testifying that she generally worked more); Doc No. 292 at 11 (Hampton testifying that under her tenure, another attorney was terminated because she could not work full-time)).

Dr. Prothro-Wiley's release for Baines to return from FMLA leave was not unconditional but was conditioned on part-time work. The FMLA did not require the City to return Baines from FMLA leave with the accommodation of her choice. *See Jones v. Gulf Coast Health Care of Delaware*, 854 F.3d 1261, 1267-1270 (11th Cir. 2017) (affirming summary judgment on an FMLA interference claim because the employee was attempting to return to light duty work and finding no violation in the employer's fitness for duty release requirement); *see also Conroy v. Twp. of Lower Merion*, 77 Fed.Appx. 556 (3d Cir. 2003) (affirming judgment as a matter of law to the employer on the employee's FMLA claim and summary judgment on the ADA claim where the employee's doctor released her to return from FMLA leave but noted she could not be exposed to air currents, and the employer conditioned her return to work on an independent medical examination). The Third Circuit explained, "the FMLA does not require an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his medical leave." *Id.* at 559 *citing* 29 C.F.R. § 825.214(b) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a

44

serious health condition, the employee has no right to restoration to another position under the FMLA"); *see also Grace v. Adran, Inc.*, 470 Fed.Appx. 812 (11th Cir. 2012) (unpublished) (affirming summary judgment on an employee's FMLA interference claim because the FMLA did not require the employer to return the employee to her position with a lifting restriction). Thus, as both the Magistrate Judge recommended and the District Court ruled, Baines' FMLA interference claim based on the failure to reinstate her to a part-time Assistant City Attorney position in February 2017 fails.

## V.    SUMMARY JUDGMENT SHOULD BE AFFIRMED ON BAINES' RETALIATION CLAIMS.

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) some causal relation between the two events. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

Baines cannot demonstrate the second prong of a prima facie case with respect to her paid leave pending a fitness for duty exam. *See Bell v. Sheriff of Broward Cnty.*, 6 F.4th 1374, 1378 (11th Cir. 2021) (affirming the 12(b)(6) dismissal of a retaliation claim; a brief suspension with pay pending an investigation is not an adverse action as it would not deter a reasonable person from exercising his rights); *Nichols v. S. Ill. Univ. – Edwardsville*, 510 F.3d 772, 787 (7th Cir. 2007) ("We agree with our sister circuits, and find that the [defendant]'s placement of [the plaintiff] on

45

paid administrative leave pending the results of his fitness-for-duty psychological examinations did not constitute a materially adverse action."). In her Appellant Brief, Baines argues that the fitness-for-duty exam—not the paid leave—was a form of retaliation. (Appellant Brief at 42-49). Therefore, the City raises this argument only out of an abundance of caution.

Baines also cannot meet the third prong of a prima facie case because she has no evidence that protected activity is the but-for cause of adverse actions. Assuming, *arguendo*, that being on paid administrative leave is an adverse action, Hampton explained the reasons for her decision: Baines was to undergo a fitness for duty exam primarily because Hampton wanted to ensure Baines' safety and others' safety and, secondarily, Hampton wanted to ensure Baines was ready for the rigors of a busy litigation practice (these also constitute legitimate, non-retaliatory reasons for the exam). Hampton's decision came after she received reports that Baines: (1) made unwanted advances to Rashad; (2) called Rashad homophobic and removed Rashad from cases after Rashad rebuffed the advances; (3) violated a No Contact Order, including screaming in Rashad's face; (4) repeatedly threatened suicide while at work; and (5) made a threat to shoot herself. Baines cannot show she would not have been on leave with pay but-for her (non-existent) complaints of sexual harassment. *See Univ. of Tex. Sw Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) (setting forth the "but-for" standard of causation in retaliation cases).

Regarding the termination decision, Baines, likewise, cannot support the third prong: causation. When Berry made the termination decision based on Baines' unauthorized outside work, he did not know about: (1) Baines' EEOC charge; (2) Rashad's claims of unwanted sexual advances and stalking by Baines; (3) Baines' alleged sexual harassment complaints; or (4) Baines' previous FMLA leave. Therefore, Baines cannot show that but-for those events, she would not have been terminated. *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (to establish a causal connection, the decisionmaker must know about the protected activity at the time of the adverse action); *see also Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1156 (11th Cir. 2002) (reversing denial of judgment as a matter of law when plaintiff's transfer was announced one day after his critical deposition testimony against the employer in another employee's discrimination case and finding no retaliation because the decisionmaker did not know about the deposition). Further, the City learned about Plaintiff's outside law practice through Attorney Aldridge, someone unaffiliated with the City, who did not know about Baines' alleged protected activity. Thus, Baines lacks evidence of but-for causation to support a *prima facie* case of Title VII retaliation.

Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse action.

*Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009). Then, the plaintiff must demonstrate the proffered reason is pretext to mask discriminatory actions. *Id.*

Here, the City articulates legitimate, non-retaliatory reasons for placing Baines on leave and requiring a fitness for duty exam before her return. Based on the reports Hampton received from Rashad (regarding Baines' unwanted advances and violating the no-contact order) and from others (regarding Baines' suicide threats), Hampton wanted to ensure Baines' safety, others' safety and that Baines was ready for the rigors of a busy litigation practice. (*See* the case law referenced, *supra*, showing that the City's decision was job-related and consistent with business necessity.) As the Magistrate Judge recommended and the District Court ruled, Baines cannot show pretext regarding the fitness for duty exam or the termination. (*See* Course of Proceedings and Disposition Below, *supra*).

The City was entitled to rely on its own interpretation of whether Baines violated the anti-moonlighting rule after she incorporated her own law firm and practiced law in a non-City case without the City's knowledge while on paid leave. *See Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181 (11th Cir. 1984) (employee's moonlighting without employer's knowledge constituted legitimate, non-discriminatory reason for termination), *abrogated on other grounds* by *Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019).

## VI.    THE PRIVILEGE DECISION SHOULD BE AFFIRMED.

As an initial matter, if this Court decides to affirm summary judgment on the substantive claims, the Court need not reach the privilege question. In her summary judgment response below and in her Appellant Brief, Baines did not argue that the discovery of the privileged information would have allowed her to defeat summary judgment. Therefore, the Court need not decide the privilege issue.

Baines argues that all emails between Attorney Gevertz and former City Attorney Berry should be disclosed because the two communicated prior to Berry deciding to terminate Baines. Specifically, Baines argues that Gevertz's emails with Berry regarding her termination fall under the crime-fraud exception to the attorney-client privilege because they involve violating Baines' civil rights. (Appellant Brief at 51). But Baines has not shown that her termination constitutes either a crime or a fraud, nor has there been any such finding. Thus, Baines has not shown the crime-fraud exception applies here.

Baines also contends the City waived privilege by sharing with Ojelade an email Gevertz wrote. (Appellant Brief at 52). However, per Baines' explanation, that disclosure to Ojelade related to the fitness for duty exam—not Baines' termination many months later.[6] (*See id.*) The City was not sharing information with Ojelade

---

[6] Like so much of this case, Baines misrepresents the facts until they are almost unrecognizable and divorced from reality. On page 52 of the Appellant Brief, she does so by quoting a portion of Gevertz's email, but the quote is incomplete and then inserts words that were not there to attempt to show that the release meant a

regarding whether Baines had an explanation for practicing law in a non-City case or hanging out her shingle. And to the extent that email was never privileged to begin with, there was no waiver of the privilege when it was shared with Ojelade.

Next, Baines contends the City waived privilege "when Berry admitted he used outside counsel to determine whether to terminate Baines." (Appellant Brief at 52). But Berry (while being honest that he talked to Gevertz and others as things were unfolding to help obtain facts) did not admit he used outside counsel to determine whether to terminate Baines; Berry kept testifying that no one recommended Baines' termination to him, and he did not consult anyone; Berry kept testifying that he made the decision. (Doc. No. 291 at 54).

Finally, Baines contends the City waived privilege because in its answer, it asserted that its actions were "taken in the good faith exercise of its duties under the law" and that it "made good faith efforts to comply with the requirements of Title VII." (Appellant Brief at 53). Such a general defense is wholly different from the case Appellant cites that allegedly stands for the proposition that a party waived privilege by injecting the issue of its knowledge of the law into the case. (*Id.*) Berry, himself, is a lawyer (the former City Attorney) who can explain his belief that he

---

"[severance/separation]" rather than a release from a third-party medical professional. The purpose is to falsely inform the Court that Gevertz had been trying to bring about Baines' termination when Baines lacks evidence of that.

followed the law when terminating Baines; that defense does not require that Berry relied on legal advice from Gevertz.

## VII.   THE DENIAL OF SANCTIONS SHOULD BE AFFIRMED.

Baines contends the District Court committed plain error when it decided not to sanction the City after its then-Counsel, Baker Donelson, had an "*ex parte*" conversation with Dr. Torre Prothro-Wiley—Baines' therapist and a fact witness in this case. (Appellant Brief at 53). However, as the City argued below, neither Baker Donelson nor the City is an entity covered by HIPAA. (Doc. Nos. 195 and 204).

And Baker Donelson did not do anything unethical given that: (1) Baines put her mental health at issue; (2) Dr. Prothro-Wiley was a fact witness because, among other things, the City communicated with her on December 6, 2016 when Baines had a breakdown at work, and Dr. Prothro-Wiley signed the release for Baines to return to work part-time; (3) Baines signed a broad release permitting Dr. Prothro-Wiley to provide information to Baker Donelson; that release was drafted by Baines' attorney, and the release asserts it complies with HIPAA; (4) Baker Donelson provided the District Court's Protective Order (Doc. Nos. 52 and 89) and Baines' release to Dr. Prothro-Wiley's attorney prior to Baker Donelson's brief conversation with Dr. Prothro-Wiley; (5) Dr. Prothro-Wiley's attorney was present during Baker Donelson's brief conversation with her; (6) Baines' attorney freely questioned Dr. Prothro-Wiley about her communications with Baker Donelson during Dr. Prothro-

Wiley's deposition; and (7) Baines did not raise any issue with the District Court until three months after that deposition. (Doc. No. 195 and exhibits thereto, *citing* Doc. Nos. 52 and 89).

At Dr. Prothro-Wiley's deposition, Baines' attorney suggested that Dr. Prothro-Wiley may have done something wrong by speaking with Baker Donelson, to which Dr. Prothro-Wiley's attorney responded:

> Notwithstanding my objection, I reviewed the [R]elease prepared by Ms. Baines's attorney, and that allows Dr. Prothro-Wiley to release any and all information and opinions concerning Ms. Baines's mental health and treatment to Baker Donelson and that Ms. Baines signed the release.
> I'm seriously offended and objecting to any implication that Dr. Prothro-Wiley acted unethically in speaking to Ms. Jarrells in my presence prior to today's deposition. I really feel that's outrageous. She has acted -- Dr. Prothro-Wiley has testified truthfully and consistently and has acted within the scope of the release, but I do want to put that objection on the record.

(Prothro-Wiley Dep., Doc. No. 277-1 at 103:8-104:3). Like so much of this case, Baines' Motion for Sanctions was mere harassment by her rather than unlawful conduct against her.

## CONCLUSION

For the foregoing reasons, the District Court's decisions granting summary judgment to the City should be affirmed. Baines has several bars to raising her substantive claims—jurisdiction, a time bar, and an administrative exhaustion issue.

Substantively, her claims lack merit. The District Court decisions should be affirmed.

Date: April 10, 2024

/s/ Halima H. White
Halima H. White
Georgia Bar No. 367888
hwhite@theemploymentlawsolution.com
Jamala S. McFadden
Georgia Bar No. 490959
jmcfadden@theemploymentlawsolution.com
The Employment Law Solution
800 Mount Vernon Highway, Suite 410
Atlanta, GA 30328
Tel: 678-424-1380
Fax: 404-891-6840

*Counsel for Appellee City of Atlanta*

## **CERTIFICATE OF COMPLIANCE**

Counsel for Appellee hereby certifies that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B) because excluding the parts of the document exempted by FRAP 32(f), this brief contains 12,882 words.

*/s/ Halima H. White*
Halima H. White
Georgia Bar No. 367888

*Counsel for Appellee City of Atlanta*

Dated: April 10, 2024

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Rule 25(d) of the Federal Rules of Appellate Procedure, I hereby certify that on this 10th day of April, 2024, I served a copy of the BRIEF OF APPELLEE CITY OF ATLANTA with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

David Gevertz: dgevertz@bakerdonelson.com

Hannah Jarrells: hjarrells@bakerdonelson.com

Suzanne Lewis: slewis@bakerdonelson.com

Cheryl B. Legare: cblegare@law-llc.com

Marissa R. Torgerson: mrtorgerson@law-llc.com

/s/ Halima H. White
Halima H. White
Georgia Bar No. 367888
Jamala S. McFadden
Georgia Bar No. 490959
The Employment Law Solution, LLC
800 Mount Vernon Highway, Suite 410
Atlanta, GA 30328
Tel: 678-424-1380
Fax: 404-891-6840
hwhite@theemploymentlawsolution.com
jmcfadden@theemploymentlawsolution.com

*Counsel for Appellee City of Atlanta*