NO. 24-10174
# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

Tamara Baines,

*Plaintiff-Appellant*,

v.

City of Atlanta, Georgia and Robin Shahar, in Her Individual Capacity,

*Defendants-Appellees*

Appeal from the United States District Court for the Northern District of Georgia

Civil Action No. 1:19-cv-00279-TWT

## APPELLEE ROBIN SHAHAR'S ANSWER BRIEF

David Edward Gevertz, Esq.
Hannah Elizabeth Jarrells Esq.
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
3414 Peachtree Road NE
Suite 1500
Atlanta, Georgia 30326
404-221-6512
*Attorneys for Appellee Robin Shahar*

i

**No. 24-10174**

**Tamara Baines v. City of Atlanta, Georgia and Robin Shahar, in Her Individual Capacity**

<u>**Certificate of Interested Persons and Corporate Disclosure Statement**</u>

Defendant-Appellee Robin Shahar ("Shahar"), pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, 26.1-2, and 26.1-3, hereby discloses a complete list of all persons or entities who may have an interest in the outcome of this case:

1. Anand, Justin S. – Magistrate Judge, United States District Court for the Northern District of Georgia, Atlanta Division;

2. Baines, Tamara – Appellant-Plaintiff;

3. Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. – Counsel for Shahar; Former Counsel for Defendant-Appellee City of Atlanta, Georgia (the "City");

4. City of Atlanta, Georgia – Appellee-Defendant;

5. Employment Law Solution – Counsel for the City;

6. Gevertz, David E. – Counsel for Shahar; Former Counsel for the City;

7. Jarrells, Hannah E. – Counsel for Shahar; Former Counsel for the City;

8. Lambert, Lisa C. – Counsel for Baines;

9. Law Office of Lisa Lambert – Counsel for Baines;

10. Legare, Attwood & Wolfe, LLC – Counsel for Baines;

11. Legare, Cheryl – Counsel for Baines;

12. Lewis, Suzanne T. – Counsel for Shahar; Former Counsel for the City;

13. McFadden, Jamala S. – Counsel for the City;

14. Thrash, Hon. Thomas W. – Senior Judge, United States District Court for the Northern District of Georgia, Atlanta Division;

15. Torgerson, Marissa R. – Counsel for Baines; and

16. White, Halima H. – Counsel for the City.

## Statement Regarding Oral Argument

Defendant-Appellee Shahar does not request oral argument. Instead, she requests that this Court decide this appeal based on the parties' briefs.

# **Table of Contents**

Certificate of Interested Persons and Corporate Disclosure Statement................... ii

Statement Regarding Oral Argument ...................................................... iv

Table of Contents ...........................................................................v

Table of Citations........................................................................ vii

Jurisdictional Statement ................................................................. xi

Statement of the Issues...................................................................1

Statement of the Case....................................................................2

I.   District Court Proceedings and Dispositions.................................2

II.  Statement of the Facts........................................................2

    A.    Plaintiff Alleges the Alleged Sexual Harassment Began in February 2016. ................................................................3

    B.    Baines Suffers a Mental Health Crisis on December 6, 2016, Takes FMLA Leave, Never to Return or Have Contact with Shahar Again...5

    C.    Baines Takes FMLA Leave................................................13

    D.    Yancy and Hampton Require Baines to Undergo a Fitness for Duty Exam Before Returning from FMLA Leave......................................16

    E.    The Newly Appointed City Attorney Terminates Baines's Employment Because She Violated the City Ordinance and Policy Prohibiting the Private Practice of Law. ......................................................20

    F.    Baines Raises Her Argument that Her Mental Condition Tolled the Relevant Statute of Limitations After Summary Judgment...............22

III. Standard of Review .......................................................................23

Summary of the Argument ......................................................................25

Argument .................................................................................................28

I.   Baines's Hostile Work Environment Claim Is Time-Barred And Cannot Be Revived By Her Tangible Employment Action Claims. ..............................28

  A.   Baines's Hostile Work Environment Claim Expired on December 6, 2018. ...........................................................................28

  B.   Purported Actions Occurring After January 15, 2017 Cannot Revive Baines's Untimely Claim. ..................................................30

    1.   42 U.S.C. § 1983 Does Not Provide a Cause of Action For Retaliatory Acts .......................................................30

    2.   Binding Precedent Prevents Baines From Reviving Her Time-Barred Hostile Work Environment Claim. ..............................31

        i.   The 2017 Actions Do Not Constitute Discrete, Tangible Employment Actions ...34

        ii.   The 2017 Actions Are Not Sufficiently Related to Baines's 2016 Claims of Sexual Harassment, and No Causal Link Exists to Tie Baines's 2016 Claims to the 2017 Actions. ......................................................35

II.   This Statute of Limitations Should Not Be Tolled. .......................................40

Conclusion ..............................................................................................45

CERTIFICATE OF COMPLIANCE ......................................................46

<u>**Table of Citations**</u>

**Cases**

*Alpharetta First United Methodist Church v. Stewart*,

    221 Ga. App. 748, 752, 472 S.E.2d 532, 535 (1996) .........................................42

*Anderson v. Liberty Lobby, Inc.*,

    477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).........................24

*Baker v. Birmingham Bd. of Educ.*,

    531 F.3d 1336 (11th Cir. 2008) ...........................................................................23

*Bourne v. Sch. Bd. of Broward Cnty.*,

    508 F. App'x 907 (11th Cir. 2013)......................................................................29

*Brown v. Ga. Bd. of Pardons & Paroles*,

    335 F.3d 1259, 1261, n.2 (11th Cir. 2003) .........................................................24

*Chambless v. La-Pac. Corp.*,

    481 F.3d 1345, 1350 (11th Cir. 2007) ......................................................... passim

*Cotton v. Cracker Barrel Old Country Store, Inc.*,

    434 F.3d 1227 (11th Cir. 2006) .................................................................. 34, 35

*Crowe v. Donald*,

    528 F.3d 1290 (11th Cir. 2008) ..........................................................................28

*Fanning v. Bos. Mkt. Corp.*,

    262 F. App'x 999 (11th Cir. 2008)......................................................................36

*Fitzpatrick v. City of Atlanta*,

  2 F.3d 1112, 1116–17 (11th Cir. 1993) ................................................23

*Frederick v. Sprint/United Mgmt. Co.*,

  246 F.3d at 1312.......................................................................... 39, 40

*Garcia v. Obasi*,

  No. 21-12919, 2022 WL 669611, at *4 (11th Cir. Mar. 7, 2022) ......................41

*Hall v. Ga. ex rel. E. Jud. Cir.*,

  No. CV410-166, 2010 WL 4279210, at *1 (S.D. Ga. Oct. 25, 2010) ................41

*Hulsey v. Pride Restaurants*, *LLC*,

  367 F.3d 1238 (11th Cir. 2004) ........................................................29

*Ireland v. Prummell*,

  53 F.4th 1274, 1286 (11th Cir. 2022) ..................................................23

*Jackson v. Ala. Dep't of Corr.*,

  643 F. App'x 889, 892 (11th Cir. 2016)................................... 33, 34, 35

*Johnson v. Booker T. Washington Broad. Serv., Inc.*,

  234 F.3d 501 (11th Cir. 2000) ..........................................................28

*Kaulia v. Cnty. of Maui, Dep'f of Pub. Works & Waste Mgmt.*,

  504 F. Supp. 2d 969, (D. Haw. 2007)...................................................34

*Knight v. Thompson*,

  797 F.3d 934, 938, n.1 (11th Cir. 2015) ...............................................41

viii

*Lewis v. Broward Cnty. Sch. Bd.*,

    489 F. App'x 297 (11th Cir. 2012)........................................................................44

*Martin v. Herrington Mill, LP*,

    316 Ga. App. 696, 698, 730, S.E.2d 164, 166 (2012) .................................. 42, 43

*Molina v. Phoenix Union High Sch. Dist.*,

    2007 WL 1412530, at *8 (D. Ariz. May 14, 2007) ............................................34

*Moore v. San Carlos Park Fire Prot. & Rescue*,

    808 F. App'x 789 (11th Cir. 2020)....................................................... 32, 33, 35

*Nat'l R.R. Passenger Corp. v. Morgan*,

    536 U.S. 101 (2002) ..........................................................................................29

*Owens v. Jackson Cnty. Bd. Of Educ.*,

    561 F. App'x 846 (11th Cir. 2014) ...................................................................31

*Ratliff v. DeKalb Cnty., Ga.*,

    62 F.3d 338 (11th Cir. 1995) ............................................................................31

*Seibert v. Comm'r, Ga. Dep't of Corr.*,

    680 F. App'x 837, 839 (11th Cir. 2017)............................................................42

*Stewart v. Jones Util. & Contracting Co. Inc.*,

    806 F. App'x 738 (11th Cir. 2020)................................................................. 29, 33

*Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of*

    *Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*,

    910 F.3d 1130, 1154 (11th Cir. 2018) ....................................................24

*Watkins v. Bowden*,

    105 F.3d 1344 (11th Cir. 1997) ...........................................................31

*Williams v. McNeil*,

    557 F.3d 1287, 1290 (11th Cir. 2009) ..................................................41

*Zamudio v. Haskins*, 775 F. App'x 614 (11th Cir. 2019)........................................44

**Statutes**

28 U.S.C. § 1291 .............................................................................. xi

42 U.S.C. § 1983 .......................................................................... passim

O.C.G.A. § 9-3-33.............................................................................27

O.C.G.A. § 9-3-90(a) .......................................................... 25, 38, 40, 41

**Rules**

Fed. R. Civ. P. 56(c)............................................................................22

## **Jurisdictional Statement**

The District Court had federal question jurisdiction over this case because Appellant-Plaintiff Baines asserted her claim against Appellee-Defendant Shahar under 42 U.S.C. § 1983. The District Court's grant of summary judgment in Appellee-Defendant Shahar's favor disposed of all claims against Shahar. Accordingly, this Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## <u>Statement of the Issues</u>

1.      Was Baines's claim of sexual harassment asserted under 42 U.S.C. § 1983 against Appellee-Defendant Shahar timely filed within the applicable two-year statute of limitations?

2.      Did the District Court Judge abuse his discretion in declining to consider Baines's tolling argument that she raised for the first time in her Objections to the Magistrate Judge's Report and Recommendation?

3.      Did Baines's mental health condition toll the two- year statute of limitations applicable to her sexual harassment claims asserted under 42 U.S.C. § 1983 to render her otherwise untimely filed Complaint timely?

1

## Statement of the Case

### I.    District Court Proceedings and Dispositions

The District Court granted Appellee-Defendant Robin Shahar's ("Shahar") Motion for Summary Judgment because Plaintiff-Appellant Baines ("Baines") did not file her hostile work environment claim asserted under 42 U.S.C. § 1983 within the applicable two-year statute of limitations. Baines now appeals the District Court's decision.

### II.    Statement of the Facts

Shahar worked as an attorney for the City of Atlanta (the "City") in its Law Department for 26 years. (Doc 297 – Pg 9:14-10:7, 24:18). Baines also worked in the City's Law Department from 2004 to 2018. (Doc 253-1 – Pg 20:13-17). In 2015 and 2016, Shahar held the position of Chief Counsel, Baines held the position of Senior Assistant City Attorney, and both reported to Deputy City Attorneys. (Doc 253-1 – Pg 226:18-23; Doc 297 – Pg 9:14-10:7). Shahar also served as the "Advisor on LGBT Issues" to Mayor Kasim Reed. (Doc 297 – Pg 38:14-24). Shahar did not manage or supervise Baines in any capacity in either role. (Doc 253-1 – Pg 348:11-355:17; Doc 297 – Pg 15:2-16:2, 40:17-24, 42:1-5; Doc 298 – Pg 208:12-16; Doc 296 – Pg 34:15-21; Doc 253-3 – Pg 8:25-10:1, 22:2-4).[1]

---

[1] Baines's assertion that, "Shahar functioned as Baines's supervisor, directing Baines's work, and Baines never assigned Shahar work," is not supported by Shahar's deposition testimony cited by

2

### A. Plaintiff Alleges the Alleged Sexual Harassment Began in February 2016.

In late 2015 or early 2016, City Attorney Cathy Hampton ("Hampton") assigned Shahar and Baines to work together on a case asserted against the City under 42 U.S.C. § 1983 ("Section 1983") along with several other attorneys and later assigned them to work together on a second case. (Doc 253-1 – Pg 252:13-24; Doc 297 – Pg 19:21-24; Doc 292 – Pg 26:20-23; Doc 253-3 – Pg 9:21-23). On both cases, Baines operated as first chair supervising a more junior attorney, and Shahar, by contrast, only occasionally provided legal strategy advice. (Doc 253-1 – Pg 294:18-20; Doc 253-3 – Pg 18:25-19:1, 48:19-49:21; Doc 297 – Pg 95:1-3, 96:7-9). As Chief Counsel, Shahar did not have the authority to assign work to other attorneys. (Doc 292 – Pg 22:2-4; Doc 297 – Pg 56:2-13).

Baines alleges that, beginning in February 2016 and continuing until December 6, 2016, Shahar touched her thigh approximately twice a week during

---

Baines. (USDA11 Doc 19, Pg 16). Shahar testified that Hampton assigned her to work on the two cases with Baines and that she worked "with" counsel of record for those cases including, but not limited to, Baines. (Doc 297 – Pg 94-96). Further, Baines's assertion that Shahar "was consulted for feedback on . . . discipline" is not supported by Shahar's deposition testimony cited by Baines. (USDA11 Doc 19, Pg 16). Shahar testified that she never recommended anyone be disciplined or fired at any time during her career at the City and that the only "consulting" occurred on two occasions: (1) Hampton asked Shahar to support attorneys (none of whom were Baines) to help those attorneys improve their performance; and (2) Hampton asked Shahar's opinion on the work performance of an attorney (who was not Baines) that Hampton was considering firing. (Doc 297 – Pg 23-24).

meetings in Shahar's office. (Doc 253-1 – Pg 209:10-15).[2] Baines submitted no written complaint about Shahar's alleged touching to any City employee. (Doc 253-1 – Pg 254:21-256:4; 281:7-14). At the same time, Baines prolifically criticized Shahar in writing to numerous supervisors about any number of other topics. (Doc 253-1 – Pg 254:19-25, 315:25-316:3; Doc 253-3 – Pg 15:4-18:9). In response to one such complaint, Baines's then supervisor, Deputy City Attorney Karen Thomas ("Thomas"), told Baines that she did not need to meet with Shahar alone. (Doc 253-1 – Pg 254:19-25, 315:25-316:3; Doc 253-3 – Pg 15:4-18:9). Nevertheless, Baines alleges that she continued to meet with Shahar alone. (Doc 253-1 – Pg 254:19-25, 315:25-316:3; Doc 253-3 – Pg 15:4-18:9). Shahar vehemently denies that she ever harassed Baines, touched Baines, or acted inappropriately towards her. (Doc 297 – Pg 199:24-202:25). Despite asserting that she verbally informed Hampton, Thomas, and Yancy about Shahar's alleged sexual harassment on multiple occasions, all deny that Baines ever made any such report. (Doc 298 – Pg 61:2-5; Doc 253-3 – Pg 12:20-22; Doc 292 – Pg 28:13-29:8, 69:2-4).

---

[2] Shahar's office was situated in a well-trafficked hallway with a glass exterior wall providing partial visibility into the office. (Doc 297 – Pg 30:13-34:8, 110:8-21, 132:11-133:20). Even so, Baines identified no witnesses to the alleged semiweekly sexual harassment. (Doc 253-1 – Pg 252:17-24, 339:22-340:11). Baines never attempted to fend off Shahar's purported advances despite the fact that she possessed a second-degree black belt in karate, a blue belt in Tae Kwon Do, and a yellow belt in Jiu-Jitsu and Shahar, by contrast, suffered from debilitating back pain that later required extensive surgery. (Doc 253-1 – Pg 259:3-21, 260:3-263:13, 277:5-280:10; Doc 297 – Pg 35:15-36:5, 91:7-9).

**B. Baines Suffers a Mental Health Crisis on December 6, 2016, Takes FMLA Leave, Never to Return or Have Contact with Shahar Again.**

The last date that any contact occurred between Baines and Shahar was on December 6, 2016. (Doc 253-1 – Pg 299:5-24, 341:14-343:12; Doc 297 – Pg 184:10-17, 185:20-23, 227:15-17; Doc 296 – Pg 71:15-72:17; Doc 253-8 – Pg 242:7-14). That morning, Baines visited Shahar's office after being summoned to a meeting by Deputy Commissioner of Human Resources Angela Addison ("Addison"). (Doc 253-1 – Pg 300:1-21; Doc 289 – Pg 59:19-61:13; Doc 297 – Pg 131:8-134:6). According to Shahar, Baines told her that Addison requested the meeting to discuss failed romantic overtures Baines made to another co-worker ("the co-worker"). (Doc 297 – Pg 136:13-137:7).

In June 2016, the co-worker complained to Hampton that Baines made inappropriate and unreciprocated romantic overtures towards her and then retaliated against her when she rejected those overtures. (Doc 253-1 – Pg 172:1-13, 192:3-200:25, 222:1-228:16, Ex. 36; Doc 292 – Pg 35:16-37:16, 39:6-42:22; Doc 298 – Pg 198:25-199:15). As a result of the City's investigation into the co-worker's complaint, Baines and the co-worker agreed to abide by a "no-contact" rule. (Doc 253-1 – Pg 172:1-13, 192:3-200:25, 222:1-228:16, Ex. 36; Doc 292 – Pg 35:16-37:16, 39:6-42:22; Doc 298 – Pg 198:25-199:15); Doc 295 – Pg 158:4-16). Hampton

informed Yancy about the co-worker's June 2016 complaint and the resulting no-contact rule. (Doc 292 – Pg 35:19-40:16; Doc 298 – Pg 56:15-59:8).

In early December 2016, Baines violated the no-contact rule and caused the co-worker to fear for her safety and report Baines's behavior to Atlanta's Chief Compliance Officer Jeffrey Norman ("Norman"). (Doc 295 – Pg 147:5-148:21, 149:1-14, 216:25-220:3; Doc 256-1 – Pg 31:21-32:24, 87:1-90:20). Norman reported the co-worker's concerns to Addison, Hampton, and Yancy. (Doc 295 – Pg 216:25-218:21; Doc 298 – Pg 69:19-70:6; Doc 289 – Pg 50:4-25). Norman arranged for the co-worker to meet with Addison on December 5, 2016. (Doc 295 – Pg 216:25-218:21; Doc 289 – Pg 50:4-25). During the meeting, the co-worker told Addison that Baines violated the no-contact rule by entering the co-worker's office and screaming at her. (Doc 289 – Pg 48:12-52:19; Doc 256-1 – Pg 36:20-37:5, 90:17-92:2).

Addison arranged to meet with Baines on the morning of December 6, 2016 to discuss the co-worker's complaint, and Baines, on her way to the meeting, stopped by Shahar's office to discuss the meeting and the co-worker. (Doc 297 – Pg 136:9-137:24; Doc 289 – Pg 59:22-61:13, Ex. 109; Doc 253-1 – Pg 300:1-22). Baines was extremely upset by the co-worker's rejection and resulting complaint and told Shahar that "she [Baines] had a gun at home and that she should have -- perhaps she should have killed herself last night and was still thinking of wanting to kill herself."

6

(Doc 297 – Pg 136:16-137:24, 139:22-140:25, 141:23-142:7). Baines, by contrast, avers that she cannot remember what she said to Shahar. (Doc 253-1 – Pg 301:22-302:5). Although Baines denies ever telling anyone at the City on December 6, 2016 that she was suicidal, Baines testified under oath that she attempted suicide on the night of December 6, 2016. (Doc 253-1 – Pg 103:8-11; 236:3-9; 301:22-23).

While Baines was still in Shahar's office, Shahar spoke by phone with Baines's therapist, Dr. Prothro-Wiley, and informed her of Baines's threat to commit suicide. (Doc 253-1 – Pg 342:7-343:2; Doc 297 – Pg 140:13-25, 142:10-144:9). Shahar then accompanied Baines to the City's Human Resources Department where Baines met alone with Addison in a private office while Shahar waited outside. (Doc 253-1 – Pg 303:23-304:12, 342:7-343:18; Doc 297 – Pg 140:13-25, 142:10-144:9 152:9-21; Doc 289 – Pg 12:13-15, 38:10-21, 39:10-24, 61:22-62:22, 64:11-17, 65:12-67:2). Addison, who is not accused of any wrongdoing by Baines, testified that Shahar did not prevent Baines from entering the office to speak with her. (Doc 289 – Pg 63:10-12). Addison also unequivocally testified that Baines told her during the meeting, "I just want to kill myself" before attempting to leave the office. (Doc 289 – Pg 38:8-39:5, 64:2-17, 65:20-66:24). Baines does not recall what, if anything, she said to Addison during the meeting. (Doc 253-1 – Pg 304:24-305:3).

Before Baines could leave, Yancy intercepted her and escorted her to Yancy's office where the two met alone – without Shahar and without Addison. (Doc 289 –

Pg 65:20-66:24; Doc 298 – Pg 66:2-13, 74:10-75:3, 205:10-23, 211:13-19; Doc 253-1 – 313:15-18). There, Baines informed Yancy that she intended to kill herself **with a gun** because "she didn't have a reason to live and that she'd had thoughts about doing it for some period of time." (Doc 298 – Pg 62:18-22, 74:10-75:3) (emphasis added). Critically and contrary to Baines's assertion, Baines, not Shahar, told Yancy that she intended to kill herself **with a gun**. (Doc 298 – Pg 74:10-75:3) (emphasis added). Yancy testified as follows:

> Q.   Were you aware on December 6 or 7, 2016, that Ms. Shahar was alleging that Ms. Baines said she had a gun?
>
> A.   Not from Ms. Shahar, from Ms. Baines.
>
> Q.   And did [Baines] tell you she was going to kill herself with a gun?
>
> A.   Yes.

(Doc 298 – Pg 74:10-75:3). Importantly, there is no evidence to support Baines's allegation that Shahar informed Yancy about Baines's intent to harm herself with a gun.

Yancy promptly called Dr. Adrienne Bradford ("Dr. Bradford"), a psychologist serving as the Director of the City's Employee Assistance Program ("EAP"), to her office to evaluate Baines and offer her support and assistance. (Doc 298 – Pg 66:14-20; Doc 253-6 – Pg 26:7-27:22). When Dr. Bradford arrived, Yancy and Addison advised her of Baines's threat to kill herself – a threat Baines personally

expressed to each of them. (Doc 289 – Pg 39:10-40:5; Doc 298 – Pg 14-67:3; Doc 253-6 – Pg 26:7-27:22, 29:8-30:2, 90:3-11).

Dr. Bradford then spoke with Baines about her threat of suicide, though Baines, at this point, attempted to minimize the seriousness of the threat but did not deny making it. (Doc 253-6 – Pg 30:19-32:14). Ultimately, Dr. Bradford arranged for Baines to be transported to Dr. Prothro-Wiley's office by another EAP employee. (Doc 253-6 – Pg 27:23-29:7). Although Baines now denies expressing a suicidal ideation at work on December 6, 2016, she admits that Dr. Bradford's actions were consistent with what she believed to be the appropriate steps to take if an employee was, in fact, suicidal. (Doc 253-1 – Pg 305:11-16).

Baines met with Dr. Prothro-Wiley, and, after concluding their therapy session, Dr. Prothro-Wiley left a voicemail on Shahar's work phone at 1:46 p.m. on December 6, 2016 informing Shahar that: (1) Baines denied owning a gun; (2) Baines denied expressing suicidal ideations at work; (3) she could not admit Baines to the hospital for mental health treatment because of Baines's denials; and (4) Shahar and the City needed to "take whatever precautions from this step for the office pertaining to [Baines] " (the "voicemail"). (Doc 297 – Pg 169:10-174:20, Ex. 9).

Baines asserts that Shahar's statement that Baines owned and intended to buy a gun influenced "multiple decision makers," "triggered the City's discriminatory

animus," and "was the driving force behind" the City's alleged tangible employment actions taken against her in 2017. (USCA11 Doc 19 – Pg 22). Baines also claims that Shahar never corrected her statement concerning Baines and the gun and implies that such a correction would have prevented the alleged employment actions from occurring. (USCA11 Doc 19 – Pg 22-23).

However, Shahar did, in fact, inform Dr. Bradford, Yancy, Hampton, and Officer Houston that Baines denied making any statement about owning or possessing a gun and denied expressing suicidal ideations at work as communicated to her in the voicemail. (Doc 297 – Pg 169:10-174:20, Ex. 9). Indeed, Shahar immediately forwarded the voicemail to Dr. Bradford on December 6, 2016. (Doc 297 – Pg 169:10-174:20, Ex. 9). In response, Dr. Bradford instructed Shahar to not return the call and assured Shahar that her office would handle the situation going forward. (Doc 297 – Pg 169:10-174:20, Ex. 9). Shahar complied with Dr. Bradford's directive and did not return Dr. Prothro-Wiley's call.

Shahar also verbally informed Yancy of the contents of the voicemail on the afternoon of December 6, 2016. (Doc 297 – Pg 169:10-174:20, Ex. 9). When Yancy learned that Baines would not be admitted to the hospital for treatment, she contacted City Police Officer Shaun Houston ("Officer Houston") to document the situation and to disable Baines's access to City Hall, the Law Department, and the parking garage. (Doc 298 – Pg 204:25-205:23). Yancy, fully aware of the contradiction

between what Baines told her that morning and what Baines told her therapist a few hours later, nevertheless took these steps because she believed that the City "had a compelling interest to make sure that the employees at work were safe, and that if [Ms. Baines] attempted to come back to work . . . was not able to do so." (Doc 298 – Pg 204:25-205:23).

Houston arrived at Yancy's office on the afternoon of December 6, 2016 and prepared a police report by soliciting information from Yancy, Shahar, and Norman. (Doc 298 – Pg 204:25-205:23, 211:1-22; Doc 293 – Pg 29:3-19; 45:11-23; 56:21-57:1; Doc 295 – Pg, 160:9-164:3; Doc 297 – Pg 159:6-10; Doc 250-13 – Pg 59:3-63:6, Ex. 8). Officer Houston's preparation of the police report was standard procedure according to Yancy because "Ms. Baines had indicated that she wanted to harm herself potentially with a gun, and so whenever that happens, there was always a police report." (Doc 298 – Pg 204:25-205:19). Officer Houston's police report states in part:

> On 12-6-2016 I Investigator S. Houston was called to the office of Ms. Yvonne Yancy along with Ms. Robin Shahar and Jeffrey Norman. Upon arrival we were made aware of current city employee (Tamara Baines) who had just made a threat to kill herself. I was told by Robin Shahar that Tamara stated she wanted to go buy a gun and kill herself.

(Doc 250-13 – Pg 59:3-63:6, Ex. 8).[3] Other than relaying the information Baines shared with Shahar in her office that morning about owning a gun and wanting to kill herself, Shahar did not provide Officer Houston with any other information contained in his report. (Doc 297 – Pg 166:17-169:9, Ex. 8). During the same meeting, Yancy instructed Officer Houston to disable Baines's access to City Hall, the Law Department, and the parking garage. (Doc 298 – Pg 204:18-205:23; Doc 250-13 – Pg 53:17-54:3).

Yancy then informed Hampton of what had just transpired. (Doc 292 – Pg 47:10-48:13). Hampton recalled Yancy informing her that Baines had made a threat to "shoot herself," and that Yancy expressed a "real concern for safety . . . not just the safety of Ms. Baines but the safety of others . . . I remember the fear." (Doc 292 – Pg 47:10-48:13). Hampton testified that Yancy was the only individual with whom she spoke to about Baines's mental health crisis on December 6, 2016 and that the only other individual with whom she spoke to about Baines's mental health crisis thereafter was Norman. (Doc 292 – Pg 49:18-50:17).

The next day, on December 7, 2016, Hampton, along with Yancy, Norman, Dr. Bradford, and Officer Houston, received an email from Shahar transcribing the

---

[3] Shahar testified that she told Officer Houston that Baines said she "had a gun" and did not tell him that Baines "wanted to buy a gun." (Doc 297 – Pg 168:10-18). Whether Baines told Shahar that she "had a gun" or "wanted to buy" a gun is immaterial to the District Court's grant of Summary Judgment to Shahar.

12

voicemail she received from Dr. Protho-Wiley the previous day. (Doc 297 – Pg 169:10-174:20, Ex. 9; Doc 292 – Pg 50:25-51:8). Yancy, Norman, Dr. Bradford, and Officer Houston, of course, were already well aware of the details of the voicemail. Hampton too was familiar with the contents of the voicemail because Yancy shared those details with her the day before. (Doc 292 – Pg 48:19-49:22). By providing the voicemail to Hampton, Yancy, Norman, Dr. Bradford, and Officer Houston, Shahar made certain that they were all aware that Baines denied owning a gun and denied expressing suicidal ideations at work.

While Baines claims that Shahar's purported sexual harassment caused her December 6, 2016 mental health crisis, Baines informed Dr. Bradford in a May 23, 2017 email that her mental health crisis was, in fact, caused by her decision to stop taking her mental health medication in 2016. (Doc 253-1 – Pg 329:15-330:5, Ex. 40). Importantly, after engaging Shahar on the morning of December 6, 2016, Baines had no further contact of any kind with Shahar and never returned to work. (Doc 253-1 – Pg 299:5-24, 341:14-343:12; Doc 297 – Pg 184:10-17, 185:20-23, 227:15-17; Doc 296 – Pg 71:15-72:17; Doc 253-8 – Pg 242:7-14). This fact is undisputed.

## C. Baines Takes FMLA Leave.

Dr. Prothro-Wiley described Baines as "upset" when Baines arrived at her office on the afternoon of December 6, 2016. (Doc 253-7 – Pg 46:7-19). Baines admitted to Dr. Prothro-Wiley that she told at least one City employee that she "was

13

thinking about suicide." (Doc 253-7 – Pg 44:7-23). However, by the end of the therapy session, Baines appeared "stable" and "lucid." (Doc 253-7 – Pg 46:7-19). Dr. Prothro-Wiley viewed the December 6, 2016 incident as "an emotional moment and when [Baines] collected herself, she was fine." (Doc 253-7 – Pg 47:23-48:14).

On January 16, 2017, however, Dr. Prothro-Wiley certified that Baines needed FMLA leave because she could not "cognitively process for her legal cases due to stress, fatigue, insomnia, and acute anxiety." (Doc 253-7 – Pg 55:3-60:5, 63:15-64:7; Doc 296 – Pg 74:24-75:20). However, Dr. Prothro-Wiley testified that Baines's cognitive difficulties as of that date were limited to "trouble focusing" and a "lack of clarity." (Doc 253-7 – Pg 59:8-18).

Notwithstanding her "emotional moment," as early as December 6 or 7, 2016, Baines retained an attorney who also worked for the City, Veronica Hoffler ("Hoffler"), to personally represent her in a potential legal action against "city employees" and a potential "EEOC matter." (Doc 253-1 – Pg 45:5-46:17). Baines also claims that she performed substantive legal work while out on FMLA leave and that she sent work related emails to her supervisor - Deputy City Attorney Kimberly Patrick ("Patrick"). For example, Baines alleges that during her FMLA leave she prepared for trial, including drafting a motion in limine, a consolidated pretrial order, and cross and direct examination outlines. (Doc 263-3 – Pg 3). Indeed, no record evidence exists that Baines was unable to manage the ordinary affairs of her life

14

from December 6, 2016 through February 27, 2017. For example, no evidence exists that Baines could not pay her bills, attend her medical appointments, feed herself, clothe herself, or perform other ordinary daily tasks.

Shortly after Baines began her FMLA leave, Patrick delegated Baines's workload to other attorneys. (Doc 297 – Pg 193:12-15, 194:23-195:1; Doc 296 – Pg 144:17-22; Doc 292 – Pg 53:14-54:18). As part of this delegation, Patrick directed Shahar to enter appearances in the two cases for which she had been a strategic consultant on. (Doc 297 – Pg 193:12-15, 194:23-195:1; Doc 250-4 – Pg 193:9-195:17, Exs. 10-11; Doc 296 – Pg 144:17-22; Doc 292 – Pg 53:14-54:18). Shahar, acting on the direction of her supervisors, also withdrew Baines from two other cases on January 18, 2017 and February 9, 2017 so that those cases could be reassigned while Baines was on FMLA leave. (Doc 297 – Pg 196:19-20, Exs. 12-13; Doc 296 - Pg 144:17-22; Doc 292 – Pg 53:14-55:9).

Baines claims that Shahar indirectly communicated with her through Hoffler by assigning her work while she was on FMLA leave. (Doc 296 – Pg 65:2-25; Doc 297 – Pg 185:13-23, 227:15-17). Notably, Hoffler testified that Patrick, not Shahar, directed her to contact Baines concerning work-related matters. (Doc 263-4 – Pg 1-2; Doc 297 – Pg 226:18-21). Patrick denies that she assigned work to Baines either directly or indirectly through Hoffler and denies that she directed anyone else at the

15

City to assign work to Baines during her leave. (Doc 296 – Pg 65:2-25; Doc 297 – Pg 185:13-23, 227:15-17).[4]

### D. Yancy and Hampton Require Baines to Undergo a Fitness for Duty Exam Before Returning from FMLA Leave.

Twice, on January 13, 2017 and again on February 1, 2017, Yancy informed Baines that she could not return to work without submitting to and passing a fitness for duty examination ("FFD"). (Doc 298 – Pg 99:1-100:14, 206:1-207:19). Yancy and Hampton, in consultation with Dr. Bradford, made this decision because of Baines's repeated suicide threats on December 6, 2016 and their lingering concerns over her safety, the safety of others, and her mental state. (Doc 298 – Pg 140:12-15, 199:1-201:25; Doc 292 – Pg 47:17-50:24, 60:8-21, 63:15-65:5). Shahar was not involved in this decision. (Doc 298 – Pg 140:12-15, 199:16-201:10; Doc 292 – Pg 50:21-24, 63:15-65:5; Doc 297 – Pg 226:22-25).

Baines claims that Shahar's assertion on December 6, 2016 that Baines owned a gun and contemplated suicide influenced Yancy's and Hampton's decision to require Baines to pass an FFD before returning to work. However, Baines's allegation is not supported by any record evidence. Moreover, Yancy's knowledge about Baines's threat to kill herself with a gun came directly from Baines herself on

---

[4] Indeed, the only message Patrick asked Hoffler to relay to Baines was to provide Baines with the contact information of an attorney who was attempting to contact Baines about an upcoming speaking opportunity. (Doc 296 – Pg 72:5-73:2).

16

the morning of December 6, 2016, and it was Yancy, not Shahar, who relayed Baines's gun threat to Hampton later that day. (Doc 292 – Pg 47:10-48:13; Doc 298 – Pg 74:10-75:3). Moreover, both Yancy and Hampton were well aware that Baines denied threatening to harm herself with a gun when she met with her therapist because Shahar forwarded the voicemail to them both on December 7, 2016. (Doc 297 – Pg 169:10-174:20, Ex. 9; Doc 292 – Pg 50:25-51:8).

On February 24, 2017, Baines submitted a note from Dr. Prothro-Wiley merely stating that Baines could return to work on February 27, 2017 with some restrictions. (Doc 253-1 – Pg 145:3-23; Doc 253-7 – Pg 63:15-65:10; Doc 298 – Pg 121:6-123:22; Doc 295 – Pg 137:6-138:3; Doc 296 – Pg, 74:13-22,76:19-77:21). Yancy promptly informed Baines that the return-to-work note did not qualify as the required fitness for duty assessment and directed her to Dr. Bradford's office to schedule the same. (Doc 297 – Pg 207:4-8; Doc 298 – Pg 15:13-19, 74:10-75:3, 140:12-15, 205:10-23; Doc 292 – Pg 50:21-24; 64:15-25; Doc 253-6 – Pg 18:9-14, 27:5-28:15; Doc 289 – Pg 12:13-15, 38:10-21, 39:10-24, 64:11-17). Importantly, while Baines worked through the fitness for duty process, the City placed her on paid administrative leave, and she received her full salary, benefits, and retained the title of Senior Assistant City Attorney. (Doc 298 – Pg 180:5-22, 214:11:23; Doc 253-1 – Pg 376:8-19).

Baines asserts that Yancy's rejection of her therapist's note, stating that it did

"little to assuage your managers legitimate concerns," somehow implies that Shahar reviewed and rejected Dr. Prothro-Wiley's note. (Doc 253-1 – Pg 351:6-352:6). No record evidence supports this inference. Yancy, Hampton, and Shahar unequivocally testified that Shahar was not consulted or in any way involved in any decision concerning Baines's return to work. (Doc 298 – Pg 207:20-208:16; Doc 292 – Pg 60:6-62:12, 63:15-64:25; Doc 297 – Pg 226:22-227:1).Yancy and Hampton also confirmed that Shahar was not Baines's manager or supervisor. (Doc 298 – Pg 207:20-208:16; Doc 292 – Pg 50:21-24; 65:22-67:5). For her part, when asked whether she had any support tying Shahar to Yancy's and Hampton's decision to require Baines to undergo a fitness for duty exam, Baines responded, "I don't recall." (Doc 253-1 – Pg 351:23-352:6).

Baines subsequently sat for a fitness for duty exam, paid for by the City, with Dr. Ojelade. (Doc 298 – Pg 218:4-7). Dr. Ojelade did not speak with Shahar at any point before, during, or after her assessment of Baines, nor did she even know who Shahar was. (Doc 297 – Pg 207:2-3; Doc 253-4 – Pg 143:10-19, 148:2-8). Dr. Bradford provided Dr. Ojelade with background information concerning Baines's December 6, 2016 mental health crisis, while Patrick and Dr. Bradford's office provided other work-related information. (Doc 253-4 – Pg 47:12-49:10, 52:1-3; Doc 298 – Pg127:13-128:6; Doc 253-6 – Pg 106:5-17, 112:24-113:9, 124:3-5, 152:1-18). Baines alone is the only person who allegedly supplied Dr. Ojelade with any

information about Shahar or purported sexual harassment. (Doc 253-4 – Pg 171:20-24). Although Baines claims that her therapist provided Dr. Ojelade with information about Shahar, Dr. Prothro-Wiley cannot recall if Baines ever even mentioned Shahar at all during their sessions and there is no mention of Shahar in her notes from Baines's therapy sessions.  (Doc 253-7 – Pg 67:14-20; 79:23-24).

Dr. Ojelade also received a copy of Officer Houston's report which included information from Shahar, Yancy, and Norman; however, no evidence exists that she relied on it or even considered it. (Doc 253-4 – Pg 112:13-19). Dr. Ojealde did, however, consult with Dr. Prothro-Wiley about Baines's mental health during the course of her assessment of Baines. (Doc 253-4 – Pg 74:20-25, 75:20-76:3, 79:19-80:19, 132:2-19, 152:18-153:22, 165:9-14; Doc 253-7 – Pg 88:13-89:18).

Importantly, Dr. Ojelade's determination that Baines was unfit was not based on Baines's work environment at the City, Baines's allegations of sexual harassment, or even the events of December 6, 2016 and, as a result, were not based on Baines's alleged interactions with Shahar or Officer Houston's report. (Doc 253-4 – Pg 130:12-131:11, 180:23-182:9). Instead, as Dr. Ojelade noted, Baines's problems were "not a work-environment problem . . . they were a Tamara Baines problem . . . [and] [i]n any high stress environment . . . she would not . . . function well." (Doc 253-4 – Pg 130:12-131:11). Specifically, when asked why she deemed Baines to be unfit, she testified that it "was clear that [Baines] had [post traumatic

19

stress disorder] that was untreated . . . I suspected that she [had] [another] disorder . . . and she wasn't willing to get treatment to be able to address those issues . . . [s]he didn't see a problem with her behavior, and so that was going to impact whether or not she could continue to be an attorney in that environment."(Doc 253-4 – Pg 130:12-131:11, 181:21-182:10).

### E. The Newly Appointed City Attorney Terminates Baines's Employment Because She Violated the City Ordinance and Policy Prohibiting the Private Practice of Law.

In July 2017, while Baines remained on paid FMLA leave and the City awaited the results of a second fitness for duty evaluation, Patrick learned that Baines was appearing as counsel in litigation involving an individual unaffiliated with the City, in apparent violation of a City ordinance and Law Department policy that prohibited attorneys in the City's employ from performing outside legal work. (Doc 296 – Pg 147:20-24; Doc 291 – Pg 28:17-29:5, 41:4-42:17, 43:10-44:6; Doc 298 – Pg 175:15-176:5). Patrick communicated this development to the new City Attorney, Jeremy Berry ("Berry"). (Doc 296 – Pg 145:22-25, 148:10-149:10, 160:4-10, 180:21-24; Doc 291 – Pg 54:1-20, 55:23-57:05, 73:7-75:20; Doc 298 – Pg 175:15-176:5).

Berry directed an investigation into Baines's non-City legal work and her defense that other City attorneys had engaged in similar prohibited private practice. (Doc 296 – Pg 152:10-155:2; 164:22-165:21; Doc 291 – Pg 48:11-56:14, 63:17-

64:3, 77:23-79:7). In reaching his decision to terminate Baines, Berry did not review Officer Houston's report, did not consult with Shahar, had no knowledge of the events of December 6, 2016, was unaware of why Baines was on administrative leave, and was unaware of any harassment claims made by or against Baines. (Doc 291 – Pg 33:21-24, 36:20-37:19,72:15-75:16). Instead, he only relied on the June 30, 2017 "notice of appearance" that Baines filed in a non-City lawsuit and the paperwork Baines filed with the Georgia Secretary of State's Office on July 11, 2017 establishing her own private law firm. (Doc 291 – Pg 72:15-75:16). Indeed, Berry testified that Baines's decision to incorporate her own law firm was integral to his termination decision because it showed that her representation of the one individual was not a "one-off situation." (Doc 291 – Pg 72:15-75:16). In fact, Berry made his decision as soon as he saw that document. (Doc 291 – Pg 72:15-75:16). Even then, the investigation continued to determine if Berry needed to fire others. (Doc 291 – Pg 77:23-79:25). Berry officially terminated Baines's employment on July 18, 2017. (Doc 291 – Pg 56:12-14, 67:14-68:18, 72:15-75:16, 79:18-25).

Importantly, Berry and Shahar each unequivocally testified that Shahar played no role whatsoever in his termination decision. (Doc 291 – Pg 75:17-20; Doc 297 – Pg 227:11-14). Berry also testified that Shahar's name did not come up in his conversations with the City's outside counsel, David Gevertz, respecting Baines's termination and that they only discussed the legality of the ordinance Baines

21

violated. (Doc 291 – Pg 84:3-14). Once again, when directly asked to point to any evidence whatsoever that Shahar influenced Berry's termination decision, Baines testified that she could not recall. (Doc 253-1 – Pg 350:18-23). Baines filed her lawsuit against Shahar on January 15, 2019. (Doc 1).

### F. Baines Raises Her Argument that Her Mental Condition Tolled the Relevant Statute of Limitations After Summary Judgment.

Shahar raised her affirmative defense that Baines's Section 1983 claim against her was barred by the statute of limitations in her April 8, 2019 Answer to Baines's Complaint, her April 11, 2019 Motion for Judgment on the Pleadings, her August 12, 2019 Answer to Baines's Amended Complaint, and her Motion for Summary Judgment. (Docs 7, 11, 51, 250, 250-1). In Baines's Responses in Opposition to Shahar's Motion for Judgment on the Pleadings and Motion for Summary Judgment, Baines never raised the argument that she now raises on appeal, *i.e.*, that her mental health crisis on December 6, 2016 tolled the statute of limitations through February 27, 2017. (Docs 15 & 263).

In fact, Baines raised the tolling argument for the first time in her October 4, 2021 Objections to the Magistrate Judge's Report and Recommendation, which recommended that the District Court grant Shahar's Motion for Summary Judgment, as a last-ditch attempt to save her untimely lawsuit after the Magistrate Judge rejected her unsupported allegations that Shahar's purported harassment continued

22

after December 6, 2016. (Doc 304). In adopting the Magistrate Judge's Report and Recommendation and granting Shahar's Motion for Summary Judgment, the District Court Judge did not consider Baines's untimely tolling argument. (Doc 320).

### III.    Standard of Review

This Court reviews "the district court's grant of summary judgment *de novo*, applying the same legal standards that bound the district court, and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008). "Summary judgment is appropriate when there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c) (internal citations omitted)).

To survive summary judgment, "the non-moving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Ireland v. Prummell*, 53 F.4th 1274, 1286 (11th Cir. 2022)(citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116–17 (11th Cir. 1993)). If the evidence produced by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted." *Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated*

*in Land Lot 1049*, 910 F.3d 1130, 1154 (11th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

This Court also reviews the District Court's interpretation and application of the statute of limitations *de novo*. *Id.* (citing *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261, n.2 (11th Cir. 2003).

## Summary of the Argument

Appellant-Plaintiff Baines ("Baines") asks this court to overturn the District Court's grant of summary judgment and to permit her untimely sexual harassment claim to proceed to trial based solely on a conspiracy theory. Indeed, despite extensive discovery including the exchange of tens of thousands of documents and eighteen depositions, Baines cannot point to a single piece of evidence to support her assertion that Appellee-Defendant Shahar ("Shahar") convinced her superiors in the Law Department, the Commissioner of Human Resources, and an independent psychologist whom she never met or communicated with to take multiple separate but timely purported retaliatory "tangible employment actions" against her after she rejected Shahar's alleged sexual advances. In advancing this argument, Baines hopes to convince the Court to ignore the facts and the law.

Baines's effort to revive her time-barred claim against Shahar first fails because 42 U.S.C. § 1983 does not provide a cause of action for retaliation. Consequently, Baines's retaliation-based claims cannot resuscitate her untimely harassment claim. Second, all but one of the 2017 actions Baines claims can save her untimely harassment claim do not, as a matter of law, constitute tangible employment actions under binding Eleventh Circuit Court of Appeals precedent. As such, they cannot carry forward her untimely harassment claim against Shahar. Third, Baines cannot demonstrate any causal link between any of the timely

purported employment actions and either Shahar's alleged sexual advances or her gender. In fact, all of the decision makers unequivocally testified that their decisions were made without any input whatsoever from Shahar and were made for reasons unrelated to Shahar, the alleged sexual harassment, or Baines's gender. Additionally, none of the employment actions were sexual in nature.

Next, Baines contends that the two-year statute of limitations applicable to her 42 U.S.C. § 1983 claim against Shahar should be tolled during the time she was on Family and Medical Leave Act ("FMLA") leave. First, Baines failed to timely raise this argument before the District Court and only raised it for the first time in her Objections to the Magistrate Judge's Report and Recommendation, which recommended that Shahar's Motion for Summary Judgment be granted. The District Court Judge properly exercised his discretion in declining to consider the argument, and Baines cannot point to any authority that would support that his declination was an abuse of discretion.

Further, even if the tolling argument was timely raised, to qualify for tolling under O.C.G.A. § 9-3-90(a), Baines must show that she was "so unsound in mind, or so diminished in intellectual capacity, that she [was] incapable of managing the ordinary affairs of life." However, Baines's own testimony that she performed significant and substantive legal work and engaged counsel to potentially sue the City, coupled with the complete absence of any record evidence that she was

meaningfully incapacitated during this time, refutes this argument. Nor should this Court toll the statute of limitations based on the doctrine of equitable tolling. In the 21 months and 9 days that passed between the time Baines purportedly regained her mental wherewithal and the day the statute of limitations expired, Baines actively pursued various legal actions against the City but took no steps to timely pursue her claim against Shahar.

For these reasons, the Court should affirm the District Court's determination that Baines's sexual harassment claim against Shahar is time-barred and dismiss the claim with prejudice.

## Argument

**I.    Baines's Hostile Work Environment Claim Is Time-Barred and Cannot Be Revived By Her Tangible Employment Action Claims.**

Sexual harassment claims brought under 42 U.S.C. § 1983 are subject to Georgia's two-year statute of limitations governing personal injury actions. O.C.G.A. § 9-3-33; *Crowe v. Donald*, 528 F.3d 1290, 1292-93 (11th Cir. 2008). Because Baines filed suit on January 15, 2019, any sexual harassment she supposedly experienced must have occurred on or after January 15, 2017.

"Sexual harassment comes in two forms: harassment that does not result in a tangible employment action ["hostile work environment theory"]. . . and harassment that does result in a tangible employment action ["tangible employment action theory"]. *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 508 (11th Cir. 2000). Baines argues that her allegations of a sexually hostile work environment, which ended on December 6, 2016, were timely filed on January 15, 2019 because they relate to several alleged tangible employment actions occurring on or after January 15, 2017. This Court should reject Baines's argument and affirm the District Court's grant of summary judgment to Shahar.

### A. Baines's Hostile Work Environment Claim Expired on December 6, 2018.

Unlawful harassment that does not result in a tangible employment action must be sufficiently severe and pervasive as to alter working conditions and create

an abusive environment. *Hulsey v. Pride Restaurants*, *LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004). When proceeding under a hostile work environment theory, single acts of harassment may be aggregated to form one unlawful employment practice. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *Stewart v. Jones Util. & Contracting Co. Inc.*, 806 F. App'x 738, 741 (11th Cir. 2020); *Chambless v. La-Pac. Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007). For a hostile work environment claim to be timely, at least one of the component acts must occur within the statutory period. *Id.*

A hostile work environment ends once the employee is no longer working in that environment. *Stewart*, 806 F. App'x at 742 (holding that when a work environment ends, a hostile work environment no longer exists); *Bourne v. Sch. Bd. of Broward Cnty.*, No. 10-60942-CIV, 2012 WL 12894235, at *4 (S.D. Fla. Feb. 13, 2012), aff'd, 508 F. App'x 907 (11th Cir. 2013) (holding that a hostile work environment ends when an employee ceases to work in the environment).

Baines left the alleged sexually hostile work environment on December 6, 2016 and never returned.  It is uncontested, and no record evidence exists to the contrary, that Shahar and Baines never crossed paths, communicated, or entered one another's lives at all after that date. Consequently, Baines had two years, or until December 6, 2018, to timely file her claim against Shahar. Baines missed this deadline, rendering her January 15, 2019 Complaint against Shahar untimely.

29

**B. Purported Actions Occurring After January 15, 2017 Cannot Revive Baines's Untimely Claim.**

To resuscitate her time-barred claim, Baines asserts that six acts, engaged in by individuals other than Shahar, that occurred on or after January 15, 2017 continued the alleged *sexually* hostile work environment Shahar created. Baines characterizes these events as "tangible employment actions" that arose out of her rejection of Shahar's alleged sexual advances. (USCA11 Doc 19 – Pg 34-37). They consist of: (1) Shahar, at the direction of her supervisors, withdrawing Baines from two cases while Baines was out on FMLA leave; (2) Yancy's and Hampton's decision to reject Dr. Prothro-Wiley's February 24, 2017 return-to-work note; (3) Yancy's and Hampton's decision to require Baines to submit to and pass a fitness for duty evaluation; (4) Dr. Ojelade's conclusion that Baines was medically unfit to return work; (5) Patrick allegedly directing Hoffler to direct Baines to work while on out on FMLA leave; and (6) Berry's decision to terminate her employment (collectively "the 2017 actions"). (USCA11 Doc19 – Pg 34-37). As explained below, none of 2017 actions constitute tangible employment actions and thus, none can revive Baines's expired hostile work environment claim.

**1. 42 U.S.C. § 1983 Does Not Provide a Cause of Action For Retaliatory Acts.**

Baines characterizes the 2017 actions as retaliation for her refusal to submit to Shahar's sexual advances. (USCA11 Doc 19 – Pg 54-61).  However, sexual

harassment retaliation is not actionable under Section 1983. See *Owens v. Jackson Cnty. Bd. Of Educ.,* 561 F. App'x 846, 848 (11th Cir. 2014) (gender-based retaliation does not implicate the U.S. Constitution's Equal Protection Clause) (citing *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) and *Ratliff v. DeKalb Cnty., Ga.*, 62 F.3d 338, 340 (11th Cir. 1995)). Baines, nevertheless, asks this Court to allow her to use allegations that, as a matter of law, do not constitute a viable cause of action to revive her time-barred claim.  This Court should decline her request. At minimum, Baines must present evidence that one or more of the 2017 actions constitutes a separate and legally cognizable act of sexual harassment that is sufficiently related to the alleged sexual harassment that occurred in 2016 before using the same to save her untimely claim. As discussed below, Baines cannot meet this evidentiary burden.

### 2. Binding Precedent Prevents Baines From Reviving Her Time-Barred Hostile Work Environment Claim.

Even if the Court overlooks Appellant's characterization of the 2017 actions as retaliatory in nature, the 2017 actions do not save her untimely hostile work environment claim.

In *Chambless v. La.-Pac. Corp.*, the plaintiff alleged that she experienced a variety of sexually harassing behaviors that created a hostile work environment such as jokes, derogatory comments, and physical touching. *Chambless,* 481 F.3d at 1347.

31

Her employer later failed to promote her and then terminated her employment. *Id.* The failure to promote and termination decisions fell within the limitations period, but the component acts of the alleged hostile work environment fell outside of it. *Id.*

The plaintiff attempted to revive her time-barred claim by asserting a link between her untimely harassment claim and the timely tangible employment actions. *Id.* This Court, in turn, explained that "[t]he pivotal question is whether the timely discrete acts are sufficiently related to the hostile work environment claim." *Id.* at 1350. To be "sufficiently-related," this Court reasoned that the timely tangible employment actions had to be of the same type of "discriminatory intimidation, ridicule, and insult" that characterized the component acts of the untimely hostile work environment claim. *Id.* This Court then concluded that the employer's decision not to promote the plaintiff on account of her failure to properly complete certain paperwork and its decision to terminate her employment because she violated its anti-smoking policy were not sufficiently-related to the sex-based jokes, comments, and touching that comprised her hostile work environment claim. *Id.* Consequently, those decisions could not save her untimely sexual harassment claim. *Id. See also Moore v. San Carlos Park Fire Prot. & Rescue*, 808 F. App'x 789, 796 (11th Cir. 2020) (holding that to be sufficiently related, the pre- and post-limitations period incidents must involve the same type of action, occur relatively frequently, and be perpetrated by the same harassers).

32

Similarly, in *Stewart v. Jones Util. & Contracting Co., Inc.*, the plaintiff sought to link her untimely hostile work environment claim to a timely tangible employment action – her employer's decision to file suit against her. *Stewart*, 806 F. App'x at 741. This Court again held the plaintiff's untimely hostile work environment claim accrued once she was no longer physically present in the workplace and that any discrete tangible employment action occurring thereafter was not a part of the prior alleged hostile work environment but rather constituted a separate act of alleged harassment. *Id.*

Baines ignores the clear precedent established in each of these cases. Under *Stewart*, Baines's alleged hostile work environment ended, and her claim accrued on December 6, 2016 when she left the work environment for good and ceased all contact with Shahar. To survive summary judgment under *Chambless* and *Moore*, Baines needed to establish that: (1) the 2017 actions met the definition of a tangible employment action; and (2) the 2017 actions were "sufficiently related" to the 2016 claims of sexual harassment meaning that: (i) the 2017 actions consisted of the same type of sexual touching and overtures she alleges occurred in 2016, and (ii) the 2017 actions were perpetrated by Shahar or directly influenced by Shahar. Baines did not and cannot meet this evidentiary burden. *Jackson v. Ala. Dep't of Corr.*, 643 F. App'x 889, 892 (11th Cir. 2016); *Chambless*, 481 F.3d at 1350.

33

### i.    The 2017 Actions Do Not Constitute Discrete, Tangible Employment Actions.

A "tangible employment action" causes economic harm and/or constitutes a significant change in employment status, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Jackson*, 643 F. App'x at 891; *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006).

From December 6, 2016 until Baines's employment ended on July 18, 2017, the City paid Baines her full salary and benefits, and she retained her title of Senior Assistant City Attorney. Therefore, none of the non-termination 2017 actions can revive Baines's time-barred hostile work environment claim. See, e.g., *Kaulia v. Cnty. of Maui, Dep't of Pub. Works & Waste Mgmt.*, 504 F. Supp. 2d 969, 996 (D. Haw. 2007) (no tangible employment action occurred when plaintiff was placed on paid administrative leave and did not experience any change in her position or responsibilities); *Molina v. Phoenix Union High Sch. Dist.*, No. CIV 05-0751-PHX-SMM, 2007 WL 1412530, at *8 (D. Ariz. May 14, 2007) (no tangible employment action occurred when plaintiff was placed on paid administrative leave and retained her position). Baines has not and cannot point to any legal authority that would support her assertion that the non-termination 2017 actions caused her economic harm, constituted a significant change in her employment status, caused her to be

34

reassigned with significantly different responsibilities, or caused her to experience a significant change in benefits. *Jackson*, 643 F. App'x at 891.

> ### ii. The 2017 Actions Are Not Sufficiently Related to Baines's 2016 Claims of Sexual Harassment, and No Causal Link Exists to Tie Baines's 2016 Claims to the 2017 Actions.

Baines also cannot demonstrate that the 2017 actions are sufficiently related to her 2016 claims of sexual harassment, nor can she demonstrate that the decision makers of the 2017 actions acted because Baines rejected Shahar's alleged sexual overtures or because of Baines's sex. See *Cotton*, 434 F.3d 1227 at 1231.

The 2017 actions are not sufficiently related to the 2016 harassment allegations because they do not involve sex-based touching, comments, insults, or intimidation. *Moore*, 808 F. App'x at 796 (11th Cir. 2020); *Chambless,* 481 F.3d at 1347. Further, because the decision makers did not consult with and were not influenced by Shahar, Baines must prove that they acted with the intent to punish her for her refusal to submit to Shahar's alleged sexual overtures and/or because of her sex. *Jackson*, 643 F. App'x at 892 (holding that the plaintiff could not establish that her termination by a non-harasser was causally related to her rejection of the harasser's alleged sexual advances where the non-harasser decision maker decided to terminate the plaintiff's employment after fully and independently investigating the plaintiff for unrelated misconduct and established through that investigation that

plaintiff did, in fact, engaged in misconduct); *Fanning v. Bos. Mkt. Corp.*, No. 1:05-CV-1121-TCB, 2007 WL 9735676, at *14 (N.D. Ga. Feb. 26, 2007), report and recommendation adopted, No. 1:05-CV-1121-TCB, 2007 WL 9735720 (N.D. Ga. Mar. 26, 2007), aff'd, 262 F. App'x 999 (11th Cir. 2008) (plaintiff's termination was not causally related to prior claim of a sexually hostile work environment where her termination occurred after the decision maker's independent investigation into the plaintiff's poor work performance). Baines cannot make this showing for any of the alleged 2017 actions.

Baines first claims that Shahar's filing of two Notices of Withdrawal, which she did at the direction of her supervisors, saves her untimely 2016 sexual harassment claims. Withdrawing Baines as counsel of record in the two active cases while she was out on medical leave is in no way analogous to the type of sexual touching Baines alleges Shahar subjected her to in 2016. Nor is there any record evidence whatsoever that would support a finding the decision to withdraw Baines was motivated by Baines's sex or gender or her refusal to submit to Shahar's sexual advances. For example, there is no evidence that cases assigned to male attorneys were not reassigned when those male attorneys were out on FMLA leave. Indeed, the District Court correctly held that reassigning and withdrawing assignments from an employee on medical leave is a commonplace office event. The filing of the Notices of Withdrawal also took place outside of Baines's presence and were not

36

directed at her. Consequently, such actions do not constitute actional sexual harassment. *O'Neal v. Se. Ga. Health Sys.*, No. 2:19-cv-067, 2021 WL 141236, at *8 (S.D. Ga. Jan. 14, 2021) (noting that arguments between employees outside of a plaintiff's presence were not actionable "discriminatory intimidation, ridicule, [or] insult").

Next, Baines argues that Yancy's and Hampton's decisions to reject Dr. Protho-Wiley's return-to-work note and to require Baines to undergo a fitness for duty examination constitute tangible employment actions sufficient to save her 2016 claims of sexual harassment. Yancy and Hampton made these decisions because Baines threatened to kill herself directly to Yancy, who reported it to Hampton, and they worried about Baines's mental health, her safety, and the safety of others. (Doc 298 – Pg 199:1-201:25; Doc 292 – Pg 47:17-50:17, 60:8-21). Yancy and Hampton both testified that they reached their decisions exclusively for those reasons and without any input from Shahar. (Doc 298 – Pg 199:1-201:25, 207:20-208:16; Doc 292 – Pg 47:17-50:17, 60:6-62:12, 63:15-64:25; Doc 297 – Pg 226:22-227:1).[5] Further, both were well aware that Baines denied owning a gun and denied expressing suicidal ideations at work because Shahar sent that information to them

---

[5] Indeed, the last communication Yancy received from Shahar regarding Baines was the transcribed December 6, 2016 voicemail from Dr. Prothro Wiley in which she informs Shahar that Baines denied owning a gun and denied expressing suicidal ideations.  (Doc 297 – Pg 169:10-174:20, Ex. 9).

on December 7, 2016 by forwarding them the transcription of the voicemail. No evidence exists to suggest that they would have acted differently if Baines were a man, and their decisions do not resemble the purported sexual overtures and touching Baines claims she experienced in 2016. As such, Yancy's and Hampton's decisions cannot resuscitate Baines's untimely sexually hostile work environment claim. See *Chambless*, 481 F.3d at 1350.

Dr. Ojelade's determination that Baines was medically unfit to return to work suffers from these same defects because her determination cannot be linked to Shahar, the purported sexual harassment Baines experienced in 2016, or Baines's gender. Instead, Dr. Ojelade's findings were based on her personal examination of Baines, her review of Baines's mental health history, and her conversations with Dr. Prothro-Wiley and Dr. Bradford. Indeed, Dr. Ojelade testified that she did not know Shahar and never spoke with her during her evaluation of Baines. Nor does any evidence link Dr. Ojelade's findings to Officer Houston's police report that included Shahar's, as well as Yancy's and Norman's, input. Additionally, the determination that Baines was unfit to return to work does not constitute the same type of sex-based harassment Baines claims she experienced in 2016. Nor is there any evidence that Dr. Ojelade's determination was based on Baines's sex or that the determination would have been different if Baines was a man. Consequently, Dr. Ojelade's determination cannot be used to resuscitate Baines's time-barred hostile work

environment claim. See *Chambless*, 481 F.3d at 1350; *Arnold*, 212 F. App'x at 808; *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d at 1312.

As for Baines's claim that she was "forced" to perform work while on leave, the record reflects that Patrick – not Shahar – is the City employee who allegedly directed Hoffler to discuss work-related matters with Baines during this time. No evidence exists that Patrick did so at Shahar's direction, because of Baines's sex, because of Officer Houston's report, or because of anything that Shahar said or did. Nor were Patrick's alleged work assignments sexually harassing in nature. See *Chambless*, 481 F.3d at 1350; *Arnold*, 212 F. App'x at 808; *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d at 1312; *McMillian*, 2008 WL 2441043, at *7.

Finally, Berry alone decided to terminate Baines's employment. (Doc 291 – Pg 75:17-20; Doc 297 – Pg 227:11-13). He did so after learning that she violated a City ordinance and Department policy prohibiting attorneys working for the City from simultaneously engaging in the private practice of law. Berry reached this decision after reviewing the results of the investigation he commissioned without any input whatsoever from Shahar, without reviewing Officer Houston's report, and without any knowledge whatsoever about why Baines was out on leave or the events of December 6, 2016.

Baines theorizes that Berry's decision must have been tainted by information he surely received from the City's outside counsel, David Gevertz, about Shahar's

alleged sexual harassment of Baines.   In fact, Berry testified that the only information Gevertz provided him concerned the legality of the City ordinance Baines violated by opening her own law firm and engaging in the private practice of law. Again, no evidence exists that Berry's decision was based on Baines's sex, Baines's purported refusal to submit to Shahar's alleged overtures, Office Houston's report, or any input whatsoever from Shahar. Nor can this decision remotely be characterized as sexual in nature. Consequently, even the City's termination decision cannot rescue Baines's untimely 2016 hostile work environment claim. See *Chambless*, 481 F.3d at 1350; *Arnold*, 212 F. App'x at 808; *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d at 1312.

## II.    This Statute of Limitations Should Not Be Tolled.

Baines argues that the statute of limitations should be tolled pursuant to O.C.G.A. § 9-3-90(a) which provides that "[i]ndividuals who are legally incompetent because of intellectual disability or mental illness, who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons." Baines first asserted this argument in her Objections to the Magistrate Judge's Report and Recommendation, which recommended that the District Court Judge grant Shahar's Motion for Summary Judgment.

In general, arguments raised for the first time in a party's Objections to a Magistrate Judge's Report and Recommendation are deemed to be waived. *Knight v. Thompson*, 797 F.3d 934, 938, n.1 (11th Cir. 2015). However, District Court Judges may, in their discretion, choose to consider newly raised arguments, but "they are under no obligation to do so." *Hall v. Ga. ex rel. E. Jud. Cir.*, No. CV410-166, 2010 WL 4279210, at *1 (S.D. Ga. Oct. 25, 2010) (holding "[w]hile district courts have the discretion to consider novel evidence and legal argument raised for the first time in an objection to a report and recommendation, they are under no obligation to do so."). Consequently, in granting Shahar's Motion for Summary Judgment, the District Court Judge properly exercised his discretion in declining to consider Baines's newly asserted tolling argument. *Williams v. McNeil*, 557 F.3d 1287, 1290 (11th Cir. 2009) (holding that a District Court Judge has "broad discretion in reviewing a magistrate judge's report and recommendation" and "[does] not abuse its discretion in declining to consider . . . an argument that was not presented to the magistrate judge."); see also *Garcia v. Obasi*, No. 21-12919, 2022 WL 669611, at *4 (11th Cir. Mar. 7, 2022) (holding that the appellant forfeited an argument by failing to raise it until objecting to the Magistrate Judge's Report and Recommendation and holding that the District Court Judge did not abuse his discretion by refusing to consider the argument in granting the appellee's motion for summary judgment).

41

Additionally, even if the District Court Judge had considered Baines's new tolling argument, Shahar was still entitled to Summary Judgment because no record evidence exists to support her claim that she was sufficiently mentality incapacitated to evoke the applicable statutory tolling rules. In determining whether the statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 should be tolled, this Court "look[s] to state law for statutory tolling rules." *Seibert v. Comm'r, Ga. Dep't of Corr.*, 680 F. App'x 837, 839 (11th Cir. 2017)Georgia courts interpreting O.C.G.A. § 9-3-90(a) have determined that:

> [W]hile a plaintiff need not be so mentally incompetent that she requires confinement or a guardian, she must be so mentally deficient (non compos mentis or insane), so unsound in mind, or so diminished in intellectual capacity, that she is incapable of managing the ordinary affairs of life.

*Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 698, 730, S.E.2d 164, 166 (2012). The burden of proof to demonstrate a mental illness so severe that a plaintiff could not manage the ordinary affairs of life falls to the plaintiff. *Id.*

Importantly, Georgia courts have repeatedly held that diagnoses of depression, despondency, borderline personality disorder, and even PTSD, without more, are insufficient to trigger O.C.G.A. § 9-3-90(a). *Alpharetta First United Methodist Church v. Stewart*, 221 Ga. App. 748, 752, 472 S.E.2d 532, 535 (1996) (plaintiff who suffered despondency, depression, and a borderline personality disorder did not suffer from mental illness sufficient to toll the statute of limitations); *Martin,* 316 Ga. App. at 699 (emotional difficulties, depression, anxiety, and PTSD

are insufficient to trigger the tolling provisions of O.C.G.A. § 9-3-90(a) where the plaintiff was able to assist the police in their investigation, answer questions posed by counselors, renew the lease to her apartment, purchase a car, and send emails).

No record evidence exists here to support Baines's newfound claim that she was unable to manage the ordinary aspects of her daily life such that the limitations period should be tolled. For example, no evidence suggests that Baines was impaired in her ability to eat, secure shelter, drive, manage her finances or her personal affairs, or otherwise go about her life during this time.

To the contrary, Baines's therapist described Baines as "stable" and "lucid" at the conclusion of their December 6, 2016 session, attributing Baines's earlier behavior as merely "an emotional moment." But it is Baines's own testimony that best undermines the argument that she was mentally incapacitated during this time. According to her sworn testimony, Baines performed a significant amount of substantive legal work during her FMLA leave, engaged counsel to potentially sue the City, and now protests her removal as active counsel in litigation filed against the City. In sum, Baines was not so "unsound in mind" or "so diminished in intellectual capacity" that she could not manage the "ordinary affairs of life." *Martin*, 316 Ga. App. at 698.

Nor is Baines entitled to equitable tolling even if she could make this showing. This Court only applies the doctrine of equitable tolling when a plaintiff

demonstrates that she has been pursuing her rights diligently and that some extraordinary circumstance stood in her way and prevented her from timely filing. *Zamudio v. Haskins*, 775 F. App'x 614, 616 (11th Cir. 2019). Baines points to no evidence that she diligently pursued her rights against Shahar after February 27, 2017.  Nor does she proffer any proof that a causal connection exists between her alleged mental incapacity and her failure to file a timely petition against Shahar. See *Lewis v. Broward Cnty. Sch. Bd.*, 489 F. App'x 297, 299 (11th Cir. 2012) (declining to apply equitable tolling because no evidence existed that the plaintiff's past mental health challenges prevented him from timely filing his action).

Twenty-one months and nine days passed between the time Baines allegedly recaptured her mental wherewithal and the time the statute of limitations period expired on December 6, 2018. During that time, Baines filed an EEOC Charge against the City alleging disability discrimination in March 2017 (Doc 1 – Pg 28) and an amended Charge of Discrimination in November 2017 (Doc 1 – Pg 4). She authorized her attorneys to enter into a tolling agreement with the City in late 2018 (Doc 6 – Pg 8) but failed to secure one with Shahar. While the failure to preserve her claims against Shahar may suggest neglect, it did not result from Baines's purported mental incapacity. Consequently, Baines is not entitled to seek equitable tolling, and her sexual harassment claim remains time-barred.

44

## <u>Conclusion</u>

The District Court correctly granted summary judgment to Shahar because Baines's sexual harassment claim is time-barred. The applicable statute of limitations expired on December 6, 2018, and Baines failed to meet that deadline. For the reasons set forth herein, this Court should not excuse Baines's failure to timely file her hostile work environment claim and should affirm the District Court's grant of summary judgment to Shahar.

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel for Appellee hereby certifies that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B), it contains 10,142 words, and complies with the typeface and type-style requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) as it was prepared with Microsoft Word using Times New Roman, 14-point font.

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC

/s/ David E. Gevertz
David E. Gevertz, GA Bar No. 292430
Hannah E. Jarrells, GA Bar No. 784478
3414 Peachtree Road, NE, Ste 1500
Atlanta, GA 30326
Telephone: 404-221-6512
Facsimile: 678-406-8816
Email: dgevertz@bakerdonelson.com
　　　hjarrells@bakerdonelson.com

*Counsel for Appellee Robin Shahar*

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have this 10thth day of April, 2024 served a copy of

**APPELLEE'S ANSWER BRIEF** by filing same with the Clerk of the Court using

the CM/ECF system which will automatically send email notification of such filing

to the following attorneys of record and via Federal Express, overnight delivery,

addressed as follows:

Cheryl B. Legare, Esq.
Missy Torgerson, Esq.
Legare, Attwood and Wolfe, LLC
125 Clairemont Avenue, Suite 380
Decatur, GA 30030
cblegare@law-llc.com

Lisa C. Lambert, Esq.
Law Office of Lisa C. Lambert
245 N. Highland Avenue
Ste 230-139
Atlanta, GA 30307
lisa@civil-rights.attorney

Jamala S. McFadden, Esq.
Halima H. White, Esq.
The Employment Law Solution
McFadden Davis, LLC
3100 Cumberland Blvd., Ste 1480
Atlanta, GA 30339
jmcfadden@theemploymentlawsolution.com
hwhite@theemploymentlawsolution.com

/s/ David E. Gevertz
David E. Gevertz
GA Bar No. 292430

*Counsel for Appellee Robin Shahar*

47