# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

## CASE NO. 24-10174-D

---

TAMARA BAINES,

*Plaintiff-Appellant*,

v.

CITY OF ATLANTA, GEORGIA and
ROBIN SHAHAR in her Individual Capacity,

*Defendant-Appellee*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
HONORABLE THOMAS W. THRASH, JR.
CASE NO. 1:19-cv-00279-TWT

---

## APPELLANT'S REPLY BRIEF

---

CHERYL B. LEGARE
MARISSA R. TORGERSON
LEGARE, ATTWOOD & WOLFE, LLC
125 Clairemont Avenue, Suite 380
Decatur, Georgia 30030
(470) 823-4000

*Counsel for Appellant Tamara Baines*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to FRAP 26.1 and Eleventh Circuit Rule 26.1, the undersigned counsel of record verifies that those persons or entities listed below have or may have an interest in the outcome of this case:

Anand, Justin S.  – Magistrate Judge, United States District Court

Baker Donelson Berman Caldwell & Berkowitz, P.C. – GA – Counsel for Appellee, City of Atlanta and Robin Shahar

Baines, Tamara – Appellant/Plaintiff

City of Atlanta, Georgia – Appellee/Defendant

Employment Law Solutions: McFadden Davis, LLC – Counsel for City of Atlanta

Gevertz, David E. – Counsel for Appellees, City of Atlanta and Robin Shahar

Jarrells, Hannah E. – Counsel for Appellees, City of Atlanta and Robin Shahar

Lambert, Lisa C. – Counsel for Appellant

Law Office of Lisa Lambert – Counsel for Appellant

Legare, Attwood & Wolfe, LLC – Counsel for Appellant

Legare, Cheryl B. – Counsel for Appellant

Lewis, Suzanne – Counsel for Appellees, City of Atlanta and Robin Shahar

McFadden, Jamala S. – Counsel for Appellee, City of Atlanta

Thrash, Thomas W. – Senior Judge, United States District Court

Torgerson, Marissa R. – Counsel for Appellant

White, Halima H. – Counsel for Appellee, City of Atlanta

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT……………..………….C-1

TABLE OF CONTENTS………………………………………………………...i

TABLE OF AUTHORITIES…………………………………………………...iii

ARGUMENT OF CITATION AND AUTHORITIES……………………………1

    I.      The City and Shahar's Responses Must Be Stricken………………...1

    II.    Baines' Section 1983 Claims Against the City and Shahar are
Timely and Actionable………………………………………………..2

        A.  Baines' Section 1983 claim against the City it timely………........2

        B.  Baines' Section 1983 claim against the City is actionable…...……3

        C.  Baines' never asserted that Hampton and Gevertz were
responsive to her complaints……………………………….......6

        D.  Baines' Section 1983 claims against Shahar are actionable and
Not time barred……………………………………………….8

    III.   Baines Exhausted her Title VII Administrative Remedies………….10

    IV.   Baines' ADA Claims were Erroneously Dismissed………………...14

        A. Baines was qualified and the City tainted the FFD process……..14

        B. The City lacked a good faith basis for the FFD…………………15

        C. The City's amendment to the FFD ordinance is further
evidence of discriminatory animus…………………………….19

        D. The City failed to accommodate Baines…………………………20

V.    The District Court Improperly Dismissed Baines' FMLA Interference Claim……………………………………………...21

VI.   Direct Evidence of Retaliation and Pretext…………………………….22

VII.  Summary Judgment was Premature Because Baines is Entitled to the City's Email with Gevertz………………………………….....24

VIII. The City Must Be Sanctioned……………………………………….25

IX.   Conclusion……………………………………………………………..28

X.    Certificate of Compliance……………………………………...29

XI.   Certificate of Service……………………………………...………30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Baker v. Wellstar Health Sys.*,
  288 Ga. 336 (2010).................................................................................. 25, 26, 27

*Brownfield v. City of Yakima*,
  612 F.3d 1140 (9th Cir. 2010) .................................................................19

*Fairchild v. Forma Sci.*,
  147 F.3d 567 (7th Cir. 1998) ...................................................................11

*Free v. Granger.*,
  887 F.2d 1552 (11th Cir. 1989)..................................................................3

*Gregory v. Ga. Dep't of Human Res.*,
  355 F.3d 1277 (11th Cir. 2004) ...............................................................13

*Jackson-Hall v. Moss Point Sch. Dist.*,
  2012 U.S. Dist. LEXIS 45947 (S.D. Ms. Apr. 2, 2012)..........................10

*Jefferson v. Sewon Am., Inc.*,
  891 F.3d 911 (11th Cir. 2018) .................................................................18

*Kelly v. Dun & Bradstreet Corp.*,
  457 Fed. Appx. 804 (11th Cir. Dec. 5, 2011).........................................14

*Kilgore v. Synthes USA, LLC*,
  No. CV 112-161, 2013 WL 12180604 (S.D. Ga. Aug. 15, 2013) .......................27

*Lawson v. Glover*,
  957 F.2d 801 (11th Cir. 1987) .................................................................3, 9

*Ortiz v. Waste Mgmt., Inc.*,
  808 Fed. Appx. 1010 (11th Cir. 2020) ............................................. 10, 13

*Parks v. City of Warner Robins*,
  841 F. Supp. 1205 (M.D. Ga. 1994)........................................................10

*Perry v. Schumacher Grp. Of La.*,
  809 Fed. Appx. 574 (11th Cir. 2020) ......................................................18

*Sanchez v. Standard Brands, Inc.*,
  431 F.2d 455 (5th Cir. 1970) ............................................................ 10, 11

*Smith v. GEO Grp., Inc.,*
   No. 5:16-CV-186 (MTT), 2019 U.S. Dist. LEXIS 99437 (M.D. Ga. June 13,
   2019),.................................................................................................. 26, 27

*Todd v. Fayette Cnty. Sch. Dist.,*
   998 F.3d 1203 (11th Cir. 2021)...................................................................15

*Upjohn Co. v. United States,*
   449 U.S. 383 (1981) ....................................................................................24

*Wade v. Sec'y of Army,*
   796 F.2d 1369 (11th Cir. 1986)...................................................................14

**Statutes and Other Authorities:**

29 C.F.R. § 1601.12(b) ...............................................................................14

29 C.F.R. § 1626.8(c)..................................................................................14

42 U.S.C. § 12112(d)(4)(A) .........................................................................19

65 Fed. Reg. 82,462 (Dec. 28, 2000) .........................................................25

FRAP 28-1, 11th Cir. IOP 2..........................................................................1

iv

## ARGUMENT AND CITATION OF AUTHORITIES

This case involves one of the worst betrayals an employee can experience in the workplace: sexual harassment by a supervisor and coworkers and a scheme between her harassers and those charged with protecting her to silence her about the abuse. Rather than address the real problem surrounding the sexual harassment Baines endured, the City retained outside counsel to assist with their plan and empower her harassers to act with impunity. In doing so, the City and Shahar have weaponized mental health biases in the hopes that this Court will ignore the clear record showing the City and Shahar subjected Baines to severe and pervasive harassment because the City and its top decision makers have those same biases.

The trial court erred in granting Defendants' summary judgment motions because Defendants' arguments rely on "facts" it viewed in the light most favorable to Defendants (the movants), instead of in the light most favorable to Baines as required by law.

## I.    The City and Shahar's Responses Must Be Stricken.

As more fully set forth in Baines' Motion to Strike, Defendants' responses should be stricken because: (1) the City's additional counsel, who filed the City's brief, had no right to file a brief[1], and (2) Shahar's response was untimely due to Shahar's failure to request an extension to respond after the March 11, 2024

---

[1] FRAP 28-1, 11th Cir. IOP 2.

deadline. In an abundance of caution, Baines replies to Defendants' contentions as this Court may not rule on the motion prior to her deadline to file.

## II.    Baines' Section 1983 Claims Against the City and Shahar are Timely and Actionable.

### A.    Baines' Section 1983 Claim against the City is Timely.

Concerned over the obvious viability of Baines' Section 1983 claim against it, the City first attempts to challenge the City's statute of limitations. However, the District Court did not address this argument because it was not credible.[2] Specifically, the City repeatedly admitted "that it alone entered into a tolling agreement with Plaintiff ending on January 15, 2019." (*See* Doc. 1, ¶¶ 12, 13; Doc. 6, p. 8, ¶ 12; Doc. 48 ¶¶ 12, 13; Doc. 50, p. 8, ¶ 12; Doc. 227-1.) Thus, the City's timeliness argument is simply a bad faith attempt to press this Court to rule on an issue that never existed.

The City's arguments are also without merit because Baines was subjected to a hostile work environment and quid pro quo sexual harassment until Baines' termination in July 2017. The City further ignored "the rule that federal courts must employ the applicable state statute of limitations in section 1983 cases … clearly requires federal courts to give a section 1983 plaintiff the benefit of any toll effected

---

[2] The City failed to challenge the statute of limitations for the City. When the Magistrate nonetheless opined that the statute of limitations for Baines' Section 1983 claim against the City lapsed, Baines objected to the Report and Recommendation and the City failed to respond to Baines' objection.

by h[er] compliance with [a relevant] exhaustion requirement." *Lawson v. Glover*, 957 F.2d 801, 806 (11th Cir. 1987). Thus, the statute of limitations was further tolled from March 2017 to August 2018, because Ms. Baines filed an EEOC Charge to meet her administrative exhaustion requirement under Title VII.

Thus, Baines' Section 1983 claim was timely.

### B.    Baines' Section 1983 Claim Against the City is Actionable.

The City had a widespread custom and policy of ignoring its sexual harassment policy and silencing victims. The City seeks to escape liability by distancing itself from Yancy and Hampton by analogizing these top decision-makers to ordinary City employees. However, the City has provided no precedent supporting its position and simply references irrelevant case law (such as *Free v. Granger*, 887 F.2d 1552 (11th Cir. 1989)) involving acts by low-level employees (and not the highest decision makers at the City) as proof the City should not be liable. The City ignores Hampton's admission she was the chief decision maker in the law department and Yancy's testimony that Hampton violated the City's sexual harassment policy by failing to refer Baines repeated complaints for investigation. (Doc. 292, 63:17-64; Doc. 297, Ex. 1, pp. 1-3; Doc. 298, 54:5-21.) Moreover, the City ignores the City's sexual harassment policy requirement that Yancy, as the HR Commissioner, investigate sexual harassment complaints (and not scheme with

Baines' harassers to silence Baines about those complaints). (Doc. 298, 24:4-25:14, 29:24-31:3, Doc. 265-15, Ex. 38.)

The City also failed to challenge Baines' argument that the City violated the sexual harassment policy when, despite admitting in every document filed before and during this case was filed that it conducted no investigation, it continues to exonerate Shahar and Rashad and convict Baines of wrongdoing based on only an alleged complaint. In fact, in its summary judgment brief, the City attempted to incorporate Shahar's summary judgment arguments, endorsing Shahar's claim she did nothing wrong in sexually harassing and assaulting Baines despite the City's utter lack of investigation.  The City also inexplicably contends that because Rashad claimed in her deposition – taken two years after Baines' termination and after meeting with directly with outside counsel at least three times – that she is not a lesbian, Rashad must also be exonerated. However, the City's sexual harassment policy requires the City to investigate *before* conclusions are reached, and the City and its attorneys admit that the City's position was (and remains) that Shahar and Rashad were innocent – and Baines was guilty – because the City learned Baines may be taking mental health pills. (Doc. 265-15, Ex. 38.)

Rashad's deposition testimony also utterly undercuts the City's argument that its sexual harassment policy protects it from liability because Rashad too admits the City failed to investigate any alleged claims she made. The City's exoneration of

Rashad is especially disingenuous when Yancy admits that Baines complained about Rashad, and when asked if the City placed Rashad on administrative leave, Yancy said Rashad "may have left early or something" or "may have been able to go home for a day or you know, take a day and think about something" before Hampton and Rashad resumed violating the no-contact order. (Doc. 298, 154.)

The City also failed to address the impact of its decision to provide legal counsel to Shahar, and choice of Gevertz as Shahar's counsel, when the City Code expressly prohibits providing counsel to an employee who acts outside of the scope of their employment and whose conduct conflicts with City policy. Atlanta City Code § 2-783(f). The City attorney is similarly prohibited from directly or indirectly defending an employee whose conduct conflicts with the City interests. Atlanta City Code § 2-403. Nonetheless, the City continues to pay for Shahar's defense, defend Shahar, Rashad, and Burnette, and again retained Gevertz to represent the City *and* Shahar in this appeal. (Appeal Docket 8-11, 13.)

Ultimately, the law requires the City to choose between the person or the policy. If it chooses the person (Shahar, Rashad, and Burnette), it cannot benefit from the existence of its sexual harassment policy as doing so violates the City's sexual harassment policy. If the City chooses to rely on its sexual harassment policy, it must comply with the policy's requirement that requires a *fair* and *impartial* investigation of the allegations and that the City not defend (or convict) anyone – even someone

taking mental health medication – without investigating. (Doc. 265-15, Ex. 38.)

The City's and its highest decision makers complete disregard for the sexual harassment and refusal to enforce its policies was endorsed over three different mayoral administrations. After Baines filed her Amended EEOC charge – specifically identifying Shahar, Rashad, and Burnette as harassing her – then-Mayor Keisha Lance Bottoms renewed Shahar as her LGBT advisor in May 2018 even though Shahar had clearly been identified as a sexual harasser and the allegations had not been investigated. (Doc. 297, 39:9-40.) In doing so, Mayor Bottoms reaffirmed the City's policy and practice, initially articulated during the Reed administration, that Shahar could continue to exert power and control over the City's LGBT employees without consequence.[3]

### C.    Baines never asserted that Hampton and Gevertz were responsive to her complaints.

Despite Baines argument that Hampton and Gevertz were involved in the scheme to violate her civil rights, the City makes the curious contention that Hampton and Gevertz were responsive to Baines' various complaints (that they allegedly knew nothing about). The City mischaracterizes Baines' testimony, ignores the evidence of Baines repeated complaints of sexual harassment, and ignores

---

[3] Shahar has several complaints against her, including race discrimination, impersonation, lying to a police officer, and encouraging an employee to lie under oath. (Doc. 295, 131:10-17, 132; Doc. 253-8, 392-393.)

Hampton and Gevertz involvement in a widespread scheme to silence Baines.

Equally offensive is the City's claim that Baines somehow admitted that Gevertz's issuance of the mutual stay away order protected Baines, despite Baines' expressly stating in her deposition that Gevertz was not there to protect her but to silence Baines. (Doc. 253-1, 276:8-23.)  Indeed, Rashad's repeated violations of the no contact order at Shahar and Hampton's direction highlights that the order was never intended to protect Baines at all. Moreover, Gevertz's email to Rashad's private email address supporting Rashad while simultaneously directing Baines not to characterize what Rashad did to Baines in the hotel as wrong is further proof of the failure to investigate Baines' concerns and the efforts made to silence her. (*Id.*) The City then attached Rashad's incomplete text messages to its position statement and falsely argued that Baines harassed Rashad and acted erratically in the months leading up to her final breakdown. Hampton and Gevertz's protection of Shahar, Rashad, and Burnette at the expense of Baines not only establishes the City's illegal policy and practice but establishes that the City's conduct was the moving force behind the violation of Baines' constitutional rights as Baines' harassers knew they could continue to harass Baines with impunity.

Thus, Baines' Section 1983 claim against the City is actionable and summary judgment should have been denied.

### D.    Baines' Section 1983 claims against Shahar are actionable and not time barred.

Shahar subjected Baines to sexual harassment that ultimately resulted in the City's termination of Baines – not a retaliation claim but a quid pro quo sexual harassment claim. Despite being at the center of Baines' sexual harassment claim and fueling the City's discriminatory animus that resulted in Baines' unlawful termination in July 2017, Shahar seeks to escape the consequences of her actions by arguing that Baines' statute of limitations began seven months prior to the termination Baines suffered specifically because she rejected Shahar's sexual advances.

Shahar contends that her actions in 2017 are not sufficiently related to the 2016 acts **while not denying that those acts occurred**. Shahar is wrong. The 2016 and 2017 actions are directly related to Baines rejection of her sexual advances. In fact, a jury can conclude from the evidence that throughout 2016, Shahar schemed with the City and Gevertz to violate Baines' civil rights and to silence and punish Baines about those violations and continued in that scheme until Baines' eventual termination in July 2017. Thus, Shahar's claim her actions, which began in early 2016 and continued to July 2017, are somehow unrelated, is completely without merit.

Shahar also contends the statute of limitations was not tolled. Interestingly,

while she addresses the mental tolling argument,[4] she does not challenge Baines' tolling argument by virtue of the condition prerequisite for filing the action against the City. Specifically, while *Lawson v. Glover* applied this tolling to the City and not the officer, this Court did not rule that it could never apply to an employee. *Lawson v. Glover*, 957 F.2d 801, 806 (11th Cir. 1987) Indeed, in *Lawson*, the critical reason why it was appropriate to only apply it to the City is because the officer's actions were not so intertwined with the City that the cases could not be filed separately. Here the City and Shahar's actions are inextricably intertwined as the City and Shahar schemed to violate Baines' civil rights. This scheme is further evidenced by the City's retention and payment of Gevertz as counsel for Shahar, steadfast defense of Shahar, attempted incorporation of Shahar's arguments into the City's summary judgment motion, and reliance on Shahar's lie to justify sending Baines to the sham FFD designed to silence (and punish) Baines about Shahar's harassment and ultimately terminate Baines. (Doc. 297, 213:9-214:9.) Just as it was not in the interest of judicial economy to file the City cases separately, the cases against Shahar (which involved the same witnesses and evidence as the City) had to be filed at the same time as the City.

---

[4] Shahar argues that Baines' lack of mental capacity, caused by Shahar's actions, did not toll the statute of limitations because Georgia Courts have not recognized a tolling for mental illnesses unrelated to Bipolar Disorder, yet the City and Shahar agreed that Baines was unable to manage the ordinary affairs of her life during this time period.

Shahar also argues the hostile work environment ended on December 6, 2016, because Baines was supposedly "no longer working in that environment." Shahar relies on *Stewart,* where the employee had already been terminated, to support her argument. However, the City and Shahar interfered with Baines' FMLA leave, and Baines remained employed with the City until her termination in July 2017. In fact, the only reason the City was able to subject Baines to a sham FFD was because Baines was employed by the City until her termination. Thus, the statute did not begin to run for Baines until she was terminated by the City in July 2017. *Jackson-Hall v. Moss Point Sch. Dist.*, 2012 U.S. Dist. LEXIS 45947, *4-5, 8-9 (S.D. Ms. Apr. 2, 2012). It is at that point that Shahar's lies no longer had a direct impact on Baines as Baines no longer had the threat of termination looming over her career. *Parks v. City of Warner Robins*, 841 F. Supp. 1205, 1209 (M.D. Ga. 1994.) Thus, Baines' Section 1983 claim against Shahar is actionable.

## III. Baines exhausted her Title VII administrative remedies.

The District Court improperly overruled the R&R's conclusion that Baines sufficiently exhausted her administrative remedies under Title VII. (Doc. 299, 35-36; Doc. 320, 2-6), relying on nonprecedential case law despite binding circuit precedent compelling the opposite conclusion.[5] (*Compare Sanchez v. Standard*

---

[5] The District Court's reliance on *Ortiz v. Waste Mgmt., Inc.*, 808 Fed. Appx. 1010 (11th Cir. 2020) for a contrary conclusion is likewise inapposite because *Ortiz* did not analyze amendments to EEOC charges at all.

*Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970) (allowing national origin discrimination charge to relate back to date of sex discrimination charge because "a charging party's failure to attach the correct legal conclusion to the factual allegations contained in a charge of discrimination is a mere technical defect") *with Fairchild v. Forma Sci.*, 147 F.3d 567, 575 (7th Cir. 1998)). The City now asks this Court to make the same error. Baines' Title VII claim must be allowed to proceed to a jury trial.

Relying on the City's calculated decision to ignore Baines' known sexual harassment complaints in its position statement as proof the City was unaware of Baines' claim was error; the lower court ignored the clear evidence of the City's scheme to silence Baines about her known sexual harassment complaints. Indeed, Gevertz intentionally failed to mention Baines' March 2017 voicemail referencing Shahar as her abuser, Baines repeated complaints of sexual harassment by Shahar and Rashad to Hampton, Thomas, Yancy and Gevertz throughout 2016 and 2017, Yancy's admission that Baines complained about Rashad, or Gevertz's involvement in the scheme to silence and punish Baines. (Doc. 253-1, 247:22-248:7, 249:17-250:2, 251:2-6, 265:1-6.)  Thus, the lower court's reliance on the position statement authored by Baker Donelson is just as erroneous as the City's reliance on Shahar as both Gevertz and Shahar were proven schemers.

Further, when Ackerman, the second FFD examiner, asked Dr. Bradford – who was communicating with Gevertz – in June 2017 about Baines' sexual harassment claims against Shahar and Rashad referenced during that evaluation, Bradford provided to him the same March 2017 letter from Gevertz to Baines as alleged proof that the City had investigated the allegations. The City cannot rely on this letter when trying to convince Ackerman that the City properly investigated Baines' sexual harassment claims (and to imply Baines' allegations lacked merit) and then claim complete ignorance seven months later.

Ultimately, Gevertz's refusal to interview Baines in March 2017 in response to her voicemail (after forwarding it to Yancy and Hampton) represents a calculated decision by the City to ignore Baines. (Doc. 264-2, ¶¶ 187-189, 195-196; Doc. 295, 182-184, 189-190.) Indeed, Gevertz's representation of Shahar (and denial Shahar engaged in any wrongdoing despite failing to investigate his client) and role in Defendants' scheme demonstrate he was never an objective investigator but instead a co-conspirator who intentionally ignored Baines' March 2017 voicemail identifying Shahar as her main tormentor and failed to investigate so the City could claim it was unable to "glean" the nature of Baines' allegations. (Doc. 253-6, p. 231.)

At its core, on March 3, 2017, Baines filed her EEOC charge *pro se*, stating she took "medical leave due to harassment at the workplace triggering effects on

[her] disability . . ." **and that she believed she was being discriminated against under Title VII**. (Doc. 249-1, 9.) Days later, Baines reiterated to Yancy that she had been sexually harassed and stalked; Yancy shared this information with Hampton and Gevertz. The following week, Gevertz alleged that he would "investigate" as Gevertz, Yancy, and Hampton secretly worked to gather ammunition to use the FFD to terminate Baines. The Court cannot merely accept the City's claimed ignorance due to their scheme.

After the City wrongfully terminated Baines on July 18, 2017, Baines timely filed an Amended Charge on November 3, 2017, expressly referencing the same hostile work environment referenced in Gevertz's letter. (Doc. 249-1, 10.) The Amended Charge made clear that Baines suffered tangible adverse employment actions because she rejected Shahar's advances and reported being stalked by Rashad and Burnette. (*Id.*) While the sexual harassment continued until July 2017, Baines prevails under either analysis because Baines' Amended Charge was "like or related to, [and] grew out of, the allegations contained in [the] EEOC charge" and permissibly and properly amplified and clarified the concerns raised in her original charge, which included "sexual harassment," noting that the harassment was ongoing as Rashad and Burnette continued to stalk her (*Id.*); *see Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004); *Ortiz v. Waste Mgmt., Inc.*, 808 Fed. Appx. 1010 (11th Cir. 2020) ("judicial claims that merely 'amplify,

clarify, or more clearly focus' the allegations in the EEOC charge are permissible");
*Kelly v. Dun & Bradstreet Corp.*, 457 Fed. Appx. 804, 805 (11th Cir. Dec. 5, 2011)
(citing 29 C.F.R. § 1601.12(b), 1626.8(c)). The EEOC had the information it needed
to investigate the dispute between the City and Baines well before its investigation
commenced. *Wade v. Sec'y of Army*, 796 F.2d 1369, 1377 (11th Cir. 1986) (citations
omitted). The exhaustion requirement should not be used as a shield by an employer
acting in bad faith.[6]

As such, the magistrate properly found that Baines exhausted her
administrative remedies and the District Court's erroneous rejection of that
conclusion must be reversed.

## IV.    Baines' ADA Claims were Erroneously Dismissed.

### A.    Baines was qualified and the City tainted the FFD process.

The City, whose discriminatory animus is apparent from the four corners of
the ammunition email, claims Baines was not "qualified" to return to the workplace
because she temporarily needed to work part-time and due to Ojelade's finding that
Baines was "unfit." Needing a temporary accommodation does not make an
employee unqualified as recognized by the Court below. And Ojelade did not find

---

[6] When Gevertz submitted the City's position statement to the EEOC on January 24,
2018, he knew he was misleading the EEOC and improperly painting Baines as a
perpetrator and not a victim. Ultimately, when Baker Donelson prepared the position
statement in late January 2018, it did so to further its agenda to silence and punish
Baines. (Doc. 249-1, 11-18.)

Baines to be unfit, she found "**she does not possess the psychological resources to function optimally in her current work environment**," i.e., the hostile work environment Baines continued to be subjected to because the City refused to do anything to stop, Shahar, Rashad, and Burnette's harassment of Baines. (Doc. 253-4. 86:14-87:12; Doc. 253-5, Ex. 34; Doc. 298, 172:4-173.) Moreover, Ojelade reached this conclusion only because the process was a complete sham as explained below.

**B.    The City lacked a good faith basis for the FFD.**

Relying on this Court's ruling in *Todd*, the City claims it had a good faith basis to require Baines alone to undergo a sham FFD, during which Baines was forced to recount the vivid details of childhood sexual abuse, however, sending an employee for a FFD to terminate them cannot possibly be in good faith. *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203 (11th Cir. 2021). The City claims the FFD was work-related, despite the ammunition email admission that the City used the FFD process to silence and terminate Baines. The City cannot possibly contend that the FFD was work related when it failed to provide Ojelade with a job description setting forth Baines' job duties.

While the City claims "multiple employees" accused Baines of making a suicide threat, this contention is specifically disputed and unsupported by the record. The only employee who accused Baines of a suicide threat before the lawsuit was

filed was Shahar who is a particularly uncredible witness. In its initial representations to the EEOC, the City identified Shahar as the sole source of the false accusations against Baines and the police report establishes the same. (Doc. 295, Ex. 90, 2-3.) Only during litigation did Yancy, who also knowingly lied in the police report, accuse Baines of making a similar threat to her. Neither Yancy nor Addison accused Baines of making a suicide threat prior to litigation. This delay in reporting such a serious allegation evidences lack of good faith in this contention and discriminatory animus.

The City also misstates Baines' position in claiming that it is undisputed that Rashad reported that Baines violated the no contact order by screaming in Rashad's office. Again, the City is taking as true allegations made during the case to attempt to divert focus from its failure to protect Baines. The only thing undisputed is that the Rashad repeatedly violated the no contact order at Hampton and Shahar's explicit direction. (Doc. 292, 40:8-42:22; Doc. 256-1, 55:21-57; Doc. 253-1, 161:3-21, 226:24-227:7, Exs. 27, 36; Doc. 298, 58:25-60; Doc. 253-8, Ex. 20, pp. 1, 7-8; Doc. 263-3, Ex. B.)

The evidence clearly supports Baines' contention that Rashad never complained, and the City's claim that Rashad complained is nothing more than a red herring to divert focus away from Baines' harassers. Hampton waited four months to ask Rashad to write the April 4, 2017 memo and only did so after Baines reported

Shahar's and Rashad's sexual harassment to Ojelade, and it was Rashad who repeatedly violated the no contact order before and after Baines' eventual breakdown on December 6, 2016. (Doc. 253-5.). Yancy then sent the memo to Ojelade to taint the FFD process so that Ojelade could have "the other side." (Doc. 298, 137:11-138:6, 187:11-21.) When Yancy and Hampton provided this information to Ojelade, they knew they did so despite no investigation ever being done into the allegations. (Doc. 256-1, 46:24-48.) Hampton's actions were clearly not those of a concerned employer, but that of a calculated schemer seeking to add the straw that broke the camel's back.

The City improperly injected Rashad's uninvestigated allegations into the FFD process despite Yancy making clear that allegedly parallel employment matters must be kept separate. (Doc. 298, 174:16-176.) In fact, the City alleges it failed to investigate Baines' sexual harassment complaints because of the FFD process. (*Id.*) Yet the City intentionally intertwined these matters by providing the police report, Rashad's memo, leave slips, and rescinded discipline to Ojelade. (Doc. 298, 187:11-21, 188, 190-194; Doc. 253-4, 110:25-111:11, 112:13-18; Doc. 253-5, Exs. 23, 25, p. 2; Doc. 267-17, 59-60; Doc. 246-11.)

The City's argument that it had a good faith basis to send Baines alone for a FFD after the City manufactured Rashad's allegations against Baines[7] also highlights the City's disregard for its sexual harassment policy. Indeed, the City's sexual harassment policy requires that the City investigate any allegations before any conclusions are reached. The City's argument is particularly disingenuous because it did not send Shahar (who had several other documented complaints against her) or Rashad (who Yancy admitted Baines complained about) for a FFD. This disparity in how the City treated Baines as compared to her harassers is not only shocking, but it highlights the City's discriminatory treatment. *Perry v. Schumacher Grp. Of La.*, 809 Fed. Appx. 574, 581 (11th Cir. 2020) (a failure to investigate may be evidence of discriminatory treatment.).

This Court also need not look further than the "ammunition" email to find the City's objective to use the FFD process to terminate Baines. While the City hopes to have this Court ignore the email, this email provides the Court with an unprecedented glimpse into the City's illegal and discriminatory intent. *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018) ("Direct evidence is 'evidence, that, if believed, proves [the] existence of [discriminatory intent] without inference or presumption.'") And courts, as this court should, caution

---

[7] The City initially claimed it sent Baines alone for a FFD because Baines harassed Rashad and now claims it sent Baines because Rashad "accused" Baines of harassment.

against using FFD exams as a tactic to "harass employees or to fish for non-work-related medical issues and the attendant 'unwanted exposure of the employee's disability and the stigma it may carry." *Brownfield v. City of Yakima*, 612 F.3d 1140, 1146 (9th Cir. 2010) (citing 42 U.S.C. §12112(d)(4)(A)). The City sent Baines for a FFD not because it was concerned about her or her coworkers, but to gather ammunition to terminate her employment as recommended by Gevertz and summary judgment should have been denied.

### C.    The City's amendment to the FFD ordinance is further evidence of discriminatory animus.

After Ojelade's FFD failed to terminate Baines because Baines requested a second evaluation under the City's FFD Ordinance, the City Council changed the City's ordinance to prevent employees from seeking a second opinion for **mental health evaluations only**.[8] This change allows the City to manipulate the FFD process to silence employees without any rational basis and to avoid having their efforts thwarted by an objective provider (like Ackerman, who was about to clear Baines before the City rushed to terminate). (Doc. 253-1, 377:3-7.) This is blatant evidence of the City's discriminatory animus toward employees with mental illnesses and supports Baines' ADA claim.

---

[8] The City changed this Ordinance in 2017 after Ackerman was about to clear Baines. (Doc. 253-1, 377:3-7.) The timing of this change is suspect due to the City's obvious efforts to poison the FFD, and Ojelade's admission that it worked.

**D.    The City failed to accommodate Baines.**

It is undisputed that Baines is disabled. (Doc. 299, 76.) The lower court properly concluded that that working full time was not an essential function of her employment and that Baines was a qualified individual under the ADA. (Doc. 299, 45-47.) The court erred in concluding that the City accommodated Baines, despite evidence that the City violated Baines' FMLA rights. (Doc. 320, 7.) When Baines was released to return to work by Prothro-Wiley, Prothro-Wiley recommended that she work reduced hours – 15-25 per week – until her next assessment. (Doc. 246-10.) As the R&R correctly noted, Prothro-Wiley's suggestion "that the City allow Plaintiff to come back half-time on a provisional basis for a month … may have been a potentially reasonable solution." (Doc. 299, 47-48.) However, the lower court improperly concluded that the City offered an accommodation when it "continued Plaintiff on paid administrative leave to allow further recovery and/or give Plaintiff an opportunity to demonstrate recovery in the form of a fitness-for-work clearance, and alternatively also offered to facilitate applications for job transfer." (Doc. 299, 47-48.)

The Court ignored the evidence showing that the purpose of placing Baines on administrative leave was to terminate her, not to allow for further recovery. (Doc. 246-11; Doc. 298, 120:19-21.) Thus, the City did not accommodate Baines and, as

the City did not attempt to argue undue burden, the lower court should be reversed regarding Baines' failure to accommodate claim.

## V.    The District Court Improperly Dismissed Baines' FMLA Interference Claim.

The District Court improperly concluded that the City did not interfere with Baines' FMLA rights when it refused to reinstate her on February 27, 2017 and forced her to undergo a sham FFD exam designed to terminate her. (Doc. 299, 74-75.) Baines' need to return to work on a part-time basis for a limited time was only temporary *but for the City's failure to protect Baines from harassment*. (Doc. 299, 74-75; Doc. 253-7, 64:21-65:10; Doc. 253-7, Ex. 11; Doc. 250-5, pp. 29-30.) The City's stated reason for its refusal to reinstate Baines was also false because Baines performed substantial substantive work while she was on FMLA, and she had leave remaining that could have covered the reduced hours until she was released to work full-time. (Docs. 299, 70-72; 269, 6.) Baines' requested temporary accommodation of reduced hours does not negate the City's fundamental duty to reinstate her under the FMLA, because working from 8:30 to 5:30 was never an "essential function" of her position. The SACA job description lists nothing in its "Essential Duties and Responsibilities" section that could reasonably be read to require full-time physical presence in office. (*See* Doc. 296, Ex. 61.) There is no evidence that Baines was required to be in the office full-time. (Doc. 262-3.) Thus, this Court should reverse the lower court's conclusion that the City had no duty to reinstate Baines to a part-

21

time version of her previous position, especially since the only reason Baines was on leave was due to the City-endorsed scheme to harass Baines.

In addition, the City did not address Baines' second interference argument that the City never requested Baines provide a certification that she could perform all essential functions of her job and was, as such, limited to reinstating her to work and later sending her for a FFD exam. As such, they have waived this argument and summary judgment must be reversed.

## VI.    Direct Evidence of Retaliation and Pretext.

The City argues that Baines' retaliation claims under the FMLA, the ADA, and Title VII were properly dismissed because Baines cannot show that "but for" the City retaliating against her, she would not have been sent for a FFD exam and later terminated. The City's argument is specious because the ammunition email literally shows the City required Baines to undergo a sham FFD to terminate Baines (and not for a good faith reason). Thus, Baines can show that "but for" the City's agenda, Baines would not have been required to undergo the FFD because the entire purpose of the FFD was to illegally terminate Baines.

Further, because the City actually required Baines to undergo a FFD because Rashad complained about Baines (it did not), the City's bad faith is more apparent. If a complaint warrants an FFD of Baines, it similarly warrants an FFD of Shahar (who has several complaints against her), Rashad (who Yancy admits Baines

complained about), and Burnette – which never happened.

The City also claims it was justified in not returning Baines to work because Baines operated a law office. This is simply false. Baines did not operate a law office while employed by the City. The City lacked a good faith belief Baines violated any ordinance when: (1) the determination of whether Baines violated the ordinance itself required an investigation which could not be conducted until after Baines returned to work; (2) the City rushed to terminate Baines before any investigation could be commenced; (3) the City used biased individuals to "investigate" while Baines was on leave in violation of the City's policies; and (4) Berry received his "advice" from Gevertz, who played a key role in illegally terminating Baines.

The evidence further shows Baines engaged in no wrongdoing and the City intentionally – within 24 hours of learning Baines would be cleared to return to work – failed to follow proper procedures to investigate whether Baines had engaged in any wrongdoing. Gevertz knew Baines had not violated the City Ordinance when he advised Berry to terminate Baines. The City does not get to hide behind its illegal scheme to justify its illegal termination of Baines.

The City's bad faith is further shown by its decision to "investigate" Baines during a time when she could not participate. Yancy made clear that the City's "unwritten policy" prohibited it from investigating an employee undergoing a FFD exam, because "it would not be appropriate to interview an employee about an

23

employment matter while they were. . . in parallel in a process to be deemed fit to actually do the work." (Doc. 298, 175:3-14, 176.) She also explained why, when trying to justify the City's failure to investigate Baines' sexual harassment claims, that "Baines could not participate in that investigation until she was actively at work." (*Id.*) Yet, while the City used the ongoing FFD process to justify its failure to investigate Baines' sexual harassment claims, it ignored that same process when rushing to terminate Baines upon receiving notice she was about to be cleared to return to work – which was the very thing the City sought to prevent so it would not have to investigate her sexual harassment claims.

## VII.  Summary Judgment was Premature Because Baines is Entitled to the City's Emails with Gevertz

Despite Gevertz's involvement in the scheme to terminate Baines the City seeks to hide behind privilege. However, because Gevertz was involved in the termination decisions as shown by the ammunition email, the emails are not protected.

The emails must be produced because they fall into the crime-fraud exception. While the City claims that the Court never ruled on that exception, the lower court did recognize that Gevertz was involved with the City to terminate Baines, thereby requiring the Court to take the next step and apply the crime-fraud exception.

The City also claims its communications with Gevertz are privileged even though the City was not seeking legal advice at all from Gevertz. In *Upjohn Co. v.*

*United States*, 449 U.S. 383 (1981), the United States Supreme Court pointed out that the purpose of the privilege "is to encourage full and frank communication between attorneys and their clients, and thereby promote broader public interests in the observance of law and administration of justice." Here however, not only were the emails not seeking "legal" advice – as illustrated by the ammunition email when Patrick (who copied Hampton) forwarded Baines' email requesting help with work while on FMLA to Gevertz and Gevertz suggested using Baines' request for "ammunition" to silence Baines along the lines suggested by Yancy – but the communications between them to violate Baines' civil rights does not further the observance of law and administration of justice.

## VIII. The City Must Be Sanctioned.

The City continues to insist Baker Donelson did nothing wrong when it held a secret *ex parte* meeting with Baines' treating therapist under the guise of "prepar[ing]" her for her deposition, (*see* Doc. 179-3), and selectively produced protected medical records and partial transcripts provided to her. In *Baker v. Wellstar Health Sys.*, 288 Ga. 336, 338 (2010) (*citing* 65 Fed. Reg. 82,462, 82,463 (Dec. 28, 2000))*,* the court noted "the dangers associated with *ex parte* interviews of health care providers are numerous…". *Baker*, 388 Ga. at 604-605. Such dangers include, "the potential for defense counsel to influence the health care provider's testimony, unwittingly or otherwise, by encouraging solidarity with

arousing sympathy for a defendant health care provider." *Id.* Those dangers were exponentially magnified due to Baker Donelson's role in the plan to terminate Baines and efforts to poison Ojelade by improperly providing Ojelade with irrelevant documents. Baker Donelson knew it was wrong when it masked its meeting with Prothro-Wiley as a "session."

Baker Donelson also misled Prothro-Wiley's counsel to coerce Prothro-Wiley to meet with them *ex parte* and knowingly mischaracterized Prothro-Wiley as a healthcare provider "who performed any employment fitness evaluations that are relevant in this case" when emailing with Prothro. (*See* Doc. 195-7.) This was a purposeful misleading interpretation of the Protective Order, as amended. The Georgia Supreme Court, in an effort to protect a party from such abuses, made clear that a Court must specifically authorize *ex parte* interviews for one to be conducted with a health care provider. *Baker*, 288 Ga. 340. Though the City argues that *Baker* only applies to disputes that involve Georgia substantive law, there is nothing in the text of the case that suggests it should be so limited, and it explicitly holds that HIPAA preempts Georgia law.

Even the cases relied on by the City defeat its argument. In *Smith v. GEO Grp., Inc.*, No. 5:16-CV-186 (MTT), 2019 U.S. Dist. LEXIS 99437, at *4 (M.D. Ga. June 13, 2019), the defendant sought a qualified protective order – something the Defendants and their counsel failed to do – from the district court permitting

defendant to meet *ex parte* with providers that were actually defense witnesses that treated the plaintiff. *Id.* at *4. In evaluating the request, the court noted that if it granted the protective order, it was required to "consider whether circumstances warrant requiring defense counsel to give the plaintiff prior notice of any scheduled interviews and the opportunity to attend." *Id.* at *5. Ultimately, the court concluded that: "Balancing Smith's rights under HIPAA and, more importantly, Smith's right to a fair trial against GEO's need for individual access to these physicians for trial preparation, the Court finds, easily, that the interests of Smith prevail." *Id.; see also Kilgore v. Synthes USA, LLC*, No. CV 112-161, 2013 WL 12180604, at *1 (S.D. Ga. Aug. 15, 2013) (denying defendants' request to conduct *ex parte* communications with plaintiff's providers "given . . . the inherent dangers of *ex parte* interviews with medical providers as stated in *Baker*".)

Here, unlike in *Smith* and *Kilgore*, Baker Donelson deprived Baines of any opportunity to object and failed to request the Court's permission. In doing so, Baker Donelson did what they have done since 2016: "act now and ask forgiveness later" despite the irreversible damage to Baines. They knew that by disclosing protected documents to Prothro-Wiley, who they maintain is "merely a fact witness," they had violated the protective order which restricted the disclosure of Baines' medical records to "experts" only.

The City must be punished.

## **CONCLUSION**

This Court should reverse the District Court and remand for further proceedings.

Respectfully submitted this 23rd day of April, 2024.

LEGARE, ATTWOOD & WOLFE, LLC

*s/ Cheryl B. Legare*
Cheryl B. Legare
Georgia Bar No. 038553
cblegare@law-llc.com
Marissa R. Torgerson
Georgia Bar No. 848356
mrtorgerson@law-llc.com

125 Clairemont Avenue, Suite 515
Decatur, Georgia 30030
T:  470-823-4000
F:  470-201-1212

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel for Appellant hereby certifies that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 6,482 words. This brief was prepared with MS Word, Times New Roman, 14-point font.

LEGARE, ATTWOOD & WOLFE, LLC

*s/ Cheryl B. Legare*
Cheryl B. Legare
Georgia Bar No. 038553
cblegare@law-llc.com
Marissa R. Torgerson
Georgia Bar No. 848356
mrtorgerson@law-llc.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this 23rd day of April 2024 filed the foregoing *Appellant's Reply Brief* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following attorneys of record:

David Gevertz:  dgevertz@bakerdonelson.com

Hannah Jarrells:  hjarrells@bakerdonelson.com

Suzanne Lewis:  slewis@bakerdonelson.com

Jamala McFadden:  jmcfadden@theemploymentlawsolution.com

Halima White:  hwhite@theemploymentlawsolution.com

LEGARE, ATTWOOD & WOLFE, LLC

*s/ Cheryl B. Legare*
Cheryl B. Legare
Georgia Bar No. 038553
cblegare@law-llc.com
Marissa R. Torgerson
Georgia Bar No. 848356
mrtorgerson@law-llc.com

125 Clairemont Avenue, Suite 515
Decatur, Georgia 30030
T:  470-823-4000
F:  470-201-1212